FREDERICK B. EARLY *vs.* AGNES A. MOOR, executrix.

Suffolk.    March 13, 14, 1924. — May 22, 1924.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & CARROLL, JJ.

*Contract*, Construction, For appraisal of value of corporate stock.  *Corporation*, Value of shares of stock.

Two shareholders of a corporation made an agreement in writing that, in case of the death of either, the survivor would " purchase and acquire the entire capital stock owned or controlled by such deceased party in said corporation at the time of his decease " and would pay to his personal representative " the fair book value of said stock " of the decedent, " the same to be ascertained by the regular and usual methods employed in the business of said corporation to ascertain the net worth of said corporation and the fair value of its said stock."  In a bill in equity by one of the parties against the executrix of the will of the other to enforce specific performance of the agreement, it was *held*, that

(1) The contract was free from ambiguity;

(2) The fair book value of the stock was to be arrived at by ascertaining the value or net worth of all the assets and deducting therefrom the liabilities, and not by ascertaining the book value of the stock without deduction for depreciation in the value of the merchandise or for worthless or doubtful accounts receivable;

(3) The date when the value of the stock was to be determined was definitely fixed by the agreement as of the time of the death of the deceased party;

(4) A contention by the defendant, that the value of the stock should be determined as of the date of the appointment of the personal representative of the deceased party to the agreement or as of a reasonable time thereafter, was not tenable;

(5) Evidence of an increase in the value of the merchandise owned by the corporation after the date of the death of the defendant's de-

cedent and that the earnings of the corporation also increased after that date was inadmissible;

(6) It not appearing in the agreement that the value of the good will, if any, of the corporation was to be taken into account, and no evidence appearing in the record that it was of value, a contention of the defendant, that it should form a part of the basis of estimation of the value of the stock, could not be sustained.

BILL IN EQUITY, filed in the Superior Court on August 16, 1921, and a cross bill, filed on October 10, 1921, for specific performance of a contract between Emil Moor, the defendant's testator, and the plaintiff relating to the purchase of shares of the capital stock of Early & Moor, Inc.

The suit was referred to a master. Material findings by the master are described in the opinion. Both parties filed exceptions to the master's report. Those of the defendant were as follows:

" 1. The master does not find what was a reasonable time after Emil Moor's death for the performance of the contract of April 17, 1920.

" 2. The master does not find the fair book value, determined by the method provided by the contract of April 17, 1920, of the stock formerly owned by Emil Moor at the time that said contract was to have been performed."

The exceptions were heard by *Morton*, J., who ordered that the defendant's exceptions be overruled and that those of the plaintiff be overruled in part and be sustained in certain matters not now material, and that otherwise the report be confirmed. No interlocutory decree in accordance with such order was entered, but the judge ruled that the words of the contract were not ambiguous and that evidence was not admissible to show the intention of the parties; that the contract did not show that the book value of the shares of stock was to be used as the basis of calculations thereunder, but that the fair book value was to be used; that such book value was to be " ascertained by the regular and usual methods employed by the corporation to arrive at net worth of the corporation; " and that the fair book value of the decedent's shares at the time of the death of the defendant's testator was $13,145.72. By order of the judge, a final

decree was entered which, among other things, ordered that the plaintiff pay that sum to the defendant in exchange for the shares of stock in question.

The order of the judge relating to the exceptions to the master's report was entered on April 20, 1923. The final decree was entered on June 27, 1923. On July 11, 1923, the defendant appealed " from the decree confirming the master's report." This is the only appeal shown by the record before the Supreme Judicial Court.

*N. L. Sheldon,* for the defendant.

*J. E. McConnell,* (*R. L. Mapplebeck* with him,) for the plaintiff.

CROSBY, J. This is a bill for specific performance of an agreement between the plaintiff and the defendant's testator. The plaintiff and Emil Moor, the testator, on April 17, 1920, each owned or controlled two hundred and fifty shares of the capital stock of Early & Moor, Inc., a Massachusetts corporation; and on that date entered into a written agreement, a material part of which is as follows:

" 1. Each of said parties agrees that in case of the decease of the other, the survivor will purchase and acquire the entire capital stock owned or controlled by such deceased party in said corporation at the time of his decease and will pay to the executor or administrator of said deceased party or to such person or persons as may be by law entitled thereto the fair book value of said stock of said deceased party, the same to be ascertained by the regular and usual methods employed in the business of said corporation to ascertain the net worth of said corporation and the fair value of its said stock; and will pay the said purchase price therefor as follows: by three collateral notes of said survivor, each for one-third of said purchase price, bearing interest at the rate of six (6) per cent. per annum, payable quarterly, and maturing in one, two and three years respectively, and secured by the entire capital stock of said corporation owned by said survivor, the same being pledged as collateral security with and for said notes and each of them. Said notes shall contain the right of prepayment."

Moor died on June 9, 1921. The book value of the entire

capital stock on that date, without deduction for depreciation in the value of the merchandise or for worthless or doubtful accounts receivable, was $51,059.23. The defendant contends in her answer that, under the terms of the agreement, she is entitled to one half of that amount as the fair value of the stock owned by the testator.

It is the contention of the plaintiff that the fair book value on June 9, 1921, is to be determined by charging off depreciation and bad debts; that the depreciation is the difference between the prices of merchandise carried as book value and the fair market value on that date; that after making such deduction and for bad debts, the total value of the capital stock was $26,291.43, and that one half of that sum was the fair book value of Moor's stock at the time of his death.

The case was referred to a master who made alternative findings as follows: " The merchandise is carried on Exhibit 5 at its market value on June 9, 1921, and the bills receivable in that exhibit constitute substantially all the bills receivable that were good on that date. If in determining the fair book value of the defendant's stock in the corporation under the agreement of April 17, 1920, the value of the merchandise is to be determined solely from its market value on the day of Mr. Moor's death, June 9, without taking into consideration the sales during the remainder of the month of June and early in July, and without taking into consideration the rise in values that began almost immediately after his death, then I find that the value of the stock of the corporation was $26,291.43 and the value of Mrs. Moor's half thereof was $13,145.72, the amount offered by the plaintiff in his bill of complaint. If, however, in determining the fair book value of the defendant's stock in the corporation I am at liberty to consider evidence showing the rise in value of the merchandise during the month of June, and the actual sales during that month and the early part of July, and if that evidence was properly admitted, then I find the fair book value of the stock of the corporation to be the sum obtained from the statement of June 30, for the entire month of June, to wit, $42,267.95, and the value of Mrs. Moor's half thereof $21,133.98."

The master also found that for more than a year before April 17, 1920, the bookkeeper of the corporation prepared monthly statements showing its assets and liabilities, stating the items in the balance of the general ledger, the items of the accounts receivable and accounts payable, and a list of the stock and consignments on hand, the capital, cash on hand, loans, supplies and losses. " These statements carried the accounts receivable and stock on hand at their book value, namely, at the face value of the accounts receivable, and the cost value of the merchandise. These statements were made for the purpose of securing bank credit and were shown to the banks from time to time as required." It is found that after December, 1920, until the date of Moor's death, there was a steady decline in the value of the merchandise and that the business was at its "lowest ebb" during the months of May and June, 1921; although the monthly statements from December, 1920, to May 31, 1921, showed the merchandise at the December figures, it had greatly depreciated in value.

The rights of the parties are to be determined by the proper construction of the language of the agreement, which is free from doubt or ambiguity. The words " fair book value " are clear when construed in connection with the entire agreement. That value is " to be ascertained by the regular and usual methods employed in the business of said corporation to ascertain the net worth of said corporation and the fair value of its said stock." It is plain that the value of the capital stock was not to be determined from the cost of the merchandise as charged on the books, nor by the full amount of the accounts receivable charged regardless of their actual value. The valuation to be made was for the purpose of determining the net worth of the corporation, in order that the value of its stock could be ascertained. This conclusion is confirmed by the recital in the agreement at the outset as to the purpose the parties had in mind in executing it, which was expressed in the following terms: " Whereas each of the parties hereto desires to protect the interest of the other and also his own interest in case of the decease of either party so that the fair value of said shares of stock

owned by such deceased party may be realized, regardless of the price at which it might otherwise have to be offered to said corporation for sale."

The finding of the master that the monthly statements, which included the merchandise on hand at cost and accounts receivable at their face value, were made for the purpose of securing bank credit explains the reason for such entries and shows that they were not to be taken as representing the net worth of the corporation. It is to be assumed that, when the agreement was made, the statements did not represent the fair book value of the corporation, and it appears that in December, 1920, the parties realized that the cost prices were not fair and reasonable and they were then somewhat reduced, and should have been entered at a still lower figure. It is manifest that under the agreement " fair book value " of the stock of the deceased is to be arrived at by ascertaining the value or net worth of all the assets and deducting therefrom the liabilities. *Duncan* v. *Landis*, 106 Fed. Rep. 839. *Cabble* v. *Cabble*, 111 App. Div. (N. Y.) 426. *National Waterworks Co.* v. *Kansas City*, 62 Fed. Rep. 853.

The date when the value of the stock is to be determined is definitely fixed by the agreement as of the time of the death of the deceased party. The contention of the defendant that the contract could not be performed until the appointment of an executor to represent the estate of the deceased, and that the value of the stock could not be determined until that time or until a reasonable time thereafter is not tenable; to hold that any time for the ascertainment of the value could be taken other than the date of the testator's death would be contrary to the express terms of the agreement. The fact that the value of the assets increased after the testator's death cannot vary or control the time agreed upon for fixing the value. Accordingly, the evidence that the value of the merchandise increased after June 9, 1921, and that the earnings of the corporation also increased after that date was inadmissible and should have been excluded. The cases of *East Tennessee Land Co.* v. *Leeson*, 183 Mass. 37, *Arnold* v. *Maxwell*, 230 Mass. 441,

and similar cases are not pertinent to the facts in the case at bar.

The defendant's contention that the good will of the business should have been taken into account in estimating the value of the stock cannot be sustained. There is no evidence in the record that it was of any value; if there had been such evidence, it could not have been considered as the parties did not include it in the agreement as an element to be taken into account.

It follows that the fair book value is to be determined as of June 9, 1921, the date of the testator's death, and that such value due the defendant is $13,145.72, as found by the master.

The final decree must stand.

*So ordered.*