JOSEPH F. VAAS *vs.* THOMAS A. CRIMMINS & others.

Suffolk. November 17, 18, 1927.— January 6, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Contract,* Construction, Performance and breach.

The value of shares of a corporation was correctly computed under a provision of a contract in writing that, on an employee owning shares ceasing to be employed by the corporation, he should transfer his shares to

the other party to the contract and should receive therefor "in cash, the value of said shares of stock as it shall appear upon the books of said corporation at the end of the last preceding fiscal year," if the employee left employment in 1921, and there was added to the par value of outstanding stock a credit balance, shown and correctly computed on the profit and loss account on the books of the corporation as closed at the end of the fiscal year 1920, and the sum so obtained was divided by the number of shares outstanding; and if the employee was paid for his shares at the rate thus ascertained and there was no deceit nor unfair dealing on the part of the other party to the contract, he cannot claim a share of a sum refunded to the corporation by the Federal government in 1925 by reason of an overpayment of a tax for the year 1918, where it appears that the overpayment was due to an error of the accountant and was first discovered by Federal authorities in 1924 and no claim for a refund was pending when the employee was paid; although, at the time the employee was paid, the items upon which was based the subsequent refund were on the books, and if, before the payment to the employee, the books of the company for 1917 and 1918 had been examined and the amount which had been paid for taxes for the year 1918 had been recomputed, the error then would have been discovered.

CONTRACT with a declaration in four counts, based respectively upon four contracts in writing, each of the purport described in the opinion and relating to the purchase by the plaintiff from the defendants of fifty shares of the capital stock of Crimmins & Peirce Co. on August 10, 1915, fifty shares on December 6, 1916, fifty shares on August 6, 1917, and ten shares on June 10, 1920. Writ dated June 30, 1926.

In the Superior Court, the action was heard by *Bishop*, J., without a jury, upon an agreed statement of facts. Material facts are stated in the opinion.

The judge, subject to exceptions by the defendants, ruled as follows:

"3. According to the true construction of the agreement sued upon, the value of the plaintiff's shares should be determined from what appeared on December 31, 1920, upon the books of the corporation, meaning by that all its books of account, honestly kept, and with obvious errors of transcription, errors in carrying forward, omissions, and errors in making up footings, corrected, so far as it was possible to correct them by facts and figures then appearing upon those books themselves.

"4. The phrase 'value of said shares of stock as it shall appear upon the books,' as used in the plaintiff's contract,

properly construed, means value as fairly determined from all the corporation's books of account in existence at the time, with obvious errors of omission, if any, corrected so far as they can be corrected from entries actually appearing on those books themselves.

"5. The plaintiff's contract, according to its true construction, does not prohibit taking into account, in determining the value of the plaintiff's shares, undisputed facts which would not naturally or properly appear upon any book of account of the corporation.

"6. The plaintiff's contract, according to its true construction, does not prohibit taking into account, in determining the value of the plaintiff's shares, undisputed facts which would not naturally or properly appear in any one place upon any book of account of the corporation.

"7. The accountant's error of omission, stated in the agreed facts, cannot affect the plaintiff's rights."

Also, subject to exceptions by the defendants, the judge ruled "that the plaintiff is entitled to the value of his shares including as an asset of the corporation the overpayment of taxes made in 1919 for the calendar year 1918 less the additional tax for the calendar year 1919."

The judge found for the plaintiff in the sum of $13,113.88. The defendants alleged exceptions.

In their brief in this court, the plaintiff's counsel argued in substance that "there is, of course, no one place in the books of account of a corporation, and no single book, where the 'value' of its shares of stock, as such, 'appears,' or can be found; there is nowhere on those books any one entry, or any one account, which gives, or purports to give, that value. There never is. The 'book value' of a share of stock can be determined from the books of account only by combining and compiling entries and figures found at various places, in various books, and then making a computation based upon the figures so combined and compiled.

"The plaintiff submits, therefore, that in determining the value of these shares for the purposes of this agreement, all of the books of account of the corporation, and everything in them — all the entries that on December 31, 1920, ap-

peared, and were to be found upon any of them — might, and should, have been taken into account.

"Now the books showed, of course, the precise amount paid to the government as a tax in 1918, and they showed (by simply adding together the two items of value of merchandise,) the correct amount of the inventory account; in other words, everything appeared upon the books, all the facts and figures appeared there which were needed — applying to them the proper provisions of law and the proper rate of taxation — to show this overpayment and the amount of it. . . .

"Our position is that the agreed facts establish a gross omission by the accountant in making up the tax return for 1918, and a resulting overpayment to the government of $681,718 (which the profit and loss account on December 31, 1920, failed to show as an asset), and that the plaintiffs were entitled to have the books, all the books, and anything and everything found in them on December 31, 1920, taken into account in order to show that the tax paid was excessive, and that there was a valid indebtedness of the government to the corporation (since paid in full); and we maintain that only in that way could the true book value of their shares be determined. . . .

"The plain truth is that the books of the corporation do show, and did show on December 31, 1920, and on December 31, 1921, that there has been this overpayment to the government. All the facts about it appear there — the agent of the government readily found it there, but this overpayment, and the debt of the government resulting from it, did not appear as an asset upon the company's balance sheet. The agreement, however, does not limit us to assets appearing as such on a balance sheet, indeed it does not so much as mention a balance sheet, which is, after all, strictly speaking, not a part of the books of account, but rather a compilation of figures taken from them."

*A. Marshall,* for the defendants.

*T. Hunt,* (*W. Motley* with him,) for the plaintiff.

CARROLL, J. The plaintiff, an employee of Crimmins & Peirce Co., a Massachusetts corporation hereinafter called

the corporation, purchased of the defendants 160 shares of the capital stock of the corporation. It was agreed in writing by the plaintiff and defendants that on the plaintiff ceasing to be employed by the corporation he would transfer his shares to the defendants, who were to pay him therefor "in cash, the value of said shares of stock as it shall appear upon the books of said corporation at the end of the last preceding fiscal year." On December 31, 1921, the plaintiff ceased to be employed by the corporation and forthwith transferred to the defendants his shares. The end of the last preceding fiscal year it was agreed was December 31, 1920. The defendants paid the plaintiff the sum of $64,044.80. The books of the corporation were closed as of the close of business on June 30 and December 31 of each year, when credit and debit balances of various ledger accounts were transferred to a profit and loss account. On December 31, 1920, the books showed a balance to the credit of profit and loss of $3,002,875.32. The valuation of the plaintiff's stock was arrived at by adding this $3,002,875.32 to the par value of the outstanding common stock and dividing the sum obtained by the number of shares of common stock already issued and outstanding.

In 1924 it was found that the corporation was entitled to a reduction in taxes paid the Federal government for the year 1918, because of an error in its tax return for the year 1918. The error came about in this way: it was the practice of the corporation to take the inventory of merchandise at the close of each year at cost or market value, whichever was lower, and to make an arbitrary deduction covering possible losses due to shrinkage in value. The inventory thus made up showed a value of merchandise on hand December 31, 1917, and January 1, 1918, of $9,063,843.82. In 1918 the corporation was informed by the internal revenue officials that this arbitrary deduction could not be allowed; consequently, the corporation entered on its books as an additional valuation of merchandise an item of $1,449,673.58 as of December 31, 1917. The accountants who made up the tax return for the year ending December 31, 1918, started the computation of net income with the inven-

tory of merchandise at $9,063,843.82, ignoring the additional item of $1,449,673.58 which appeared on the books. This resulted in an overstatement of taxable net income to the extent of $1,449,673.58. In 1924 the error in the return was discovered. The computation of the tax was then revised by starting with an inventory of $10,513,517.40, that being the total of the depreciated inventory of $9,063,843.82 plus the additional merchandise item of $1,449,673.58, which the accountant who prepared the return had ignored. Making the new computation of the tax for 1918 on this basis, the United States agent reported, in 1924, that there had been an overassessment for 1918 of $681,718.94, which amount, less $59,545.62, an additional tax assessed for the year 1919, with interest to May 7, 1925, was received by the corporation on October 5, 1925, by government check for $825,008.37.

The contention of the plaintiff is that he has not been paid the value of his stock "as it shall appear upon the books of said corporation"; that he is entitled to recover an additional sum equal to the proportional share of his stock in the $681,718.94 and interest thereon paid by the government. In the Superior Court, the judge ruled that the plaintiff was entitled to have included, as an asset in determining the value of his shares, the overpayment of taxes for the year 1918, less the additional tax for 1919, and found for the plaintiff in the sum of $13,113.88.

The written contracts of the parties stipulated that when the plaintiff ceased to be employed by the corporation he would forthwith transfer his shares of stock therein to the defendants, who were thereupon to pay the plaintiff in cash "the value of said shares of stock as it shall appear upon the books of said corporation at the end of the last preceding fiscal year." The amount which the plaintiff was to be paid was the value of his stock as shown by the books of the corporation for the preceding fiscal year. This fiscal year was the year ending December 31, 1920. It is not questioned that the books of the corporation made up for that year showed a profit and loss account of $3,002,875.32; that this computation was accurate. There was no error or mistake in ascertaining the value of the plaintiff's stock

according to the corporation books as they were kept for the preceding fiscal year. If the value determined by the corporation books showing the condition of the corporation in the year 1920 is to govern, then the plaintiff has been paid in full for the value of his stock.

The plaintiff's contention is that he is entitled to share in the payment made to the corporation in 1925, by the United States, for the excess taxes for 1918. The defendants believed that the tax return for that year was correct. The error in this return was not discovered until 1924, after the plaintiff had transferred his stock and had been paid therefor. It is not contended that there was any deceit or unfair dealing by the defendants, and there was no error in the books. The error was in the tax return for the year 1918 which was not a part of the books. Whatever right the corporation might have to recover this overpayment of taxes, it did not appear on the books, and it was not to be expected that it would appear, as the defendants themselves and the officers of the corporation were in ignorance that this right existed. The additional valuation of $1,449,673.58 did, however, appear on the books, but the tax accountant ignored it in making up the tax return.

· The books were correctly kept. Even if all the books of the corporation could be examined in order to determine the value of the stock, there was nothing in the accounts for the years preceding the fiscal year 1920, to show that the value of the stock was greater than that placed upon it as shown by the books for that year. Whether the method of making an arbitrary deduction in the inventory was followed or the additional sum of $1,449,673.58 for valuation of merchandise, as ordered by the internal revenue officials, was entered on the books, it made no difference in ascertaining the value of the stock at the close of the fiscal year 1920. Whichever method was pursued, so far as the real value of the corporation assets was concerned, it was correctly accounted for and fairly determined.

If an account receivable, honestly supposed to be of no value, was carried on the books for the year 1918 as worthless, and in 1925 the account was collected, it would probably

not be contended that the plaintiff would be entitled to share
in this payment. An inventory in 1920 might show an asset
to be of no value; in 1925 this asset might be valuable, but
under the plaintiff's contract he agreed to be governed by
the books, the value of his stock to be determined by what
they disclosed. He was not to be called on to pay for losses
or recover profits because it was subsequently discovered
that the inventory was too high or too low.

The rights of the parties are to be determined in deciding
on the value of this stock by the books of the corporation;
and "as it shall appear upon the books of said corporation
at the end of the last preceding fiscal year." The plaintiff
is bound by this agreement. It was agreed that the state-
ment of profit and loss was "a correct computation"; that
the claim against the United States to recover taxes for the
year 1918 was not carried as an asset on the books, nor was
the sum of $59,545.62 additional taxes for the year 1919,
which was assessed after December 31, 1920, carried as a
liability at any time during the year 1920. In these circum-
stances we are unable to see how the plaintiff can rightfully
contend under his contract that he has not been fully paid
the value of his stock.

The books did show the correct amount of assets for the
year 1918, and it could be discovered what was the accurate
amount of taxes for 1918; but this fact does not give the
plaintiff a right to recover. One familiar with the Federal
tax law who examined the tax return in the year 1918 and
compared it with the corporation books for 1917 might have
discovered the overpayment of taxes. But no examination
of the books alone would show the excess payment and no
examination of the books showing the condition of the corpo-
ration in the fiscal year preceding the settlement would make
known the overpayment in the year 1918. The possibility
of a return of taxes was not looked upon as an asset. The
parties decided upon a definite and fixed method of arriving
at the value of the stock which was to settle the value accord-
ing to a standard agreed on, without delay or uncertainty,
and unaffected by future contingencies. This method was
the value of the stock as it appeared on the books at a certain

time, that is, at the end of the last preceding fiscal year. It was not intended that the profits or losses were to remain in doubt; they were fixed by the statement honestly entered in the books.

The plaintiff relies on *Early* v. *Moor*, 249 Mass. 223, 225. That was a suit in equity between the executrix of one who, with the plaintiff, equally owned or controlled the stock of a corporation. Their agreement provided that the survivor was to purchase the stock of the deceased and to pay the fair book value, "the same to be ascertained by the regular and usual methods employed in the business of said corporation to ascertain the net worth of said corporation." In the course of the opinion it was said at page 227: "The words 'fair book value' are clear when construed in connection with the entire agreement. That value is 'to be ascertained by the regular and usual methods employed in the business of said corporation to ascertain the net worth of said corporation and the fair value of its said stock' . . . the value of the capital stock was not to be determined from the cost of the merchandise as charged on the books, nor by the full amount of the accounts receivable charged regardless of their actual value." In the case at bar the books were to control, and there was no provision in the contract that the value of the shares was to be ascertained from any other sources except the books. It was the value appearing on the books for the preceding fiscal year without resort to other methods which was to control; and it was the value as there shown upon which the parties acted in making the settlement. As the contract which must govern the rights of the parties shows the intention to take the books as they were, without going into other evidence in arriving at the value of the stock, the plaintiff could not be called on to aid in the payment of additional taxes for the time preceding his transfer of stock nor to participate in the repayment of taxes for such time.

It follows that the defendants' exceptions are sustained, and judgment is to be entered for the defendants.

*So ordered.*