HAROLD J. COOLIDGE *vs.* OLD COLONY TRUST COMPANY
& another.

SAME *vs.* L. CUSHING GOODHUE, administrator, & another.

Suffolk.    December 2, 1926. — May 20, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, & SANDERSON, JJ.

*Contract*, Construction. *Sale*, Of shares of unincorporated association.
*Pledge. Bona Fide Purchaser. Equity Pleading and Practice*, Appeal;
Master: findings of fact, requests for findings.

If a suit in equity is referred to a master by a rule in the usual form direct-
ing him " to find the facts, and report the same," and the master files a
report containing no report of evidence, exceptions to findings of fact
in the report must be overruled unless on the face of the report they are
mutually inconsistent and contradictory; and exceptions to a refusal
of requests for findings of certain facts must be overruled.

A trustee of an unincorporated association, having transferable shares
of beneficial interest and managed by three trustees, knew a leading
specialist dealing in shares in such associations and told him that he
was in the market to buy all or any part of three hundred shares and
a price was agreed upon, the specialist to look after himself as to com-
pensation and no questions to be asked.   For some years the specialist
had conducted the greater part of his business, not as a broker but as a
dealer, had quoted prices to interested purchasers or sellers, intending
to be able himself to purchase and sell as the case might be at a price
showing him a profit.   If he could not reach terms at such prices, he
would get his customer to change his bid.   To the trustee in question
he sent a memorandum that he had purchased shares for him at the
price named.   The trustee sent him a check.   The day after the
receipt of the check, the specialist bought the shares, received certi-
ficates with accompanying papers clearing them for transfer with the
association and bearing approval in writing of an associate trustee of
the plaintiff, but not mentioning the name of the purchasing trustee.
The specialist, with a blank indorsement for transfer, pledged the shares
as security for a personal debt at a trust company which did not know
of the customer trustee's relations with the specialist, substituting such
certificate for other security which he then withdrew from the trust
company.   The specialist died and the customer trustee then as an
individual sought by a suit in equity to require the trust company to
deliver the shares to him, alleging that the specialist was his agent and
that the trust company had notice that the specialist had no title nor
authority warranting the pledge.   A master found the foregoing facts,
and that the relation between the plaintiff and the specialist was that of
buyer and seller or debtor and creditor, and that, after the notification

to the plaintiff, the specialist did nothing to appropriate any particular stock to the use of the plaintiff. The bill was dismissed. The plaintiff appealed. *Held,* that

(1) When the contract of purchase was made between the plaintiff and the specialist, the shares were not transferred and at that time no title passed to the plaintiff;

(2) The specialist had no title to transfer until he bought the shares;

(3) Title to property not transferable at the date of the contract of sale does not pass until designated for the buyer by some overt act of the seller; there was no such designating act here for the plaintiff after the specialist purchased the shares;

(4) When the plaintiff paid money to the specialist, the money became the property of the specialist and the relation between the two was that of creditor and debtor;

(5) The specialist on the facts having absolute title, could transfer it to another; there was nothing about the papers when received by the trust company to put it on its guard;

(6) No relation was created by the transactions between the plaintiff and the specialist which stood in the way of the rights of the trust company;

(7) The decree dismissing the bill was affirmed.

Two BILLS IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on September 19, 1925, respectively against the Old Colony Trust Company and the administrator of the estate of George Burroughs, and the State Street Trust Company and such administrator, to require the trust companies to deliver to the plaintiff shares of University Associates, an unincorporated association, which the plaintiff alleged that Burroughs as purchaser for him had wrongfully pledged to the trust companies, each of which was alleged to have been chargeable with notice that the shares were not the property of Burroughs and that he had no authority to pledge them as collateral security for loans made to him personally.

The suits were referred to a master. Material facts found by the master are stated in the opinion. He reported no evidence. The defendant filed exceptions to the master's report, all of which were either to findings made or to a refusal or failure to make findings. The suits were heard by *Pierce,* J., by whose order there were entered interlocutory decrees overruling the exceptions to the master's report and confirming the report, and final decrees dismissing the bills. The plaintiff appealed from all decrees.

*E. A. McLaughlin, Jr.,* (*H. J. Coolidge* with him,) for the plaintiff.

*R. E. Goodwin,* (*L. Wheeler, Jr.,* with him,) for Goodhue, administrator.

*E. K. Arnold,* for State Street Trust Company.

*N. Leonard,* for Old Colony Trust Company.

RUGG, C.J.   These are two suits whereby the plaintiff seeks to recover one hundred and ninety shares in the University Associates, an unincorporated association having transferable shares of beneficial interest and managed by three trustees, of whom he was one.   He seeks to recover in the first suit one hundred and sixty-five of these shares from the Old Colony Trust Company, which claims to hold them as collateral security for indebtedness to it of one Burroughs, now deceased, and in the second suit twenty-five shares from the State Street Trust Company, which claims to hold them as collateral security for indebtedness to it of said Burroughs.   The administrator of Burroughs is a party defendant in each suit.   The cases were referred to a master.   They come before this court on appeals from interlocutory decrees overruling the plaintiff's objections to and confirming the master's report, and from a final decree in each case dismissing the bill.

There is no report of the evidence.   Therefore the findings of fact made by the master must stand and be accepted as true and final unless upon the face of the report they are mutually inconsistent and contradictory.   They are not subject to revision.   Those here made are not open to legal objection.   *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334.   *Goldband* v. *Commissioner of Banks,* 245 Mass. 143, 146.   *Porter* v. *Spring,* 250 Mass. 83.   *Simpkins* v. *Old Colony Trust Co.* 254 Mass. 576, 580.

Requests for findings of fact were made to the master by the plaintiff.   The rule to the master was in the usual form and directed him "to find the facts, and report the same." Therefore these requests for findings of fact present nothing for our consideration at this time.   *Warfield* v. *Adams,* 215 Mass. 506, 519, 520.   *Smith* v. *Lloyd,* 224 Mass. 173, 175. *Tuttle* v. *Corey,* 245 Mass. 196, 203.

It follows that the cases must be considered and decided by the application of the governing principles of law to the facts as set forth in the master's report.

The material facts thus found by the master are that in 1925 the plaintiff decided to buy shares in the University Associates. He knew one Burroughs, a leading specialist dealing in this class of property, whose reputation at that time was unblemished. To an agent of Burroughs he said that he was in the market to buy all or any part of three hundred shares of the University Associates. A price of $75 per share was agreed upon, Burroughs to look after himself as to compensation and no questions to be asked. Thus Burroughs was enabled to buy at the lowest price at which he could obtain the shares and to make as profit for himself the difference between that price and the $75 per share to be paid to him by the plaintiff. On April 28, Burroughs sent to the plaintiff notification of this tenor: "We have this day sold to you 90 shares University Associates at $75. per share." On the following day the plaintiff sent to Burroughs his check in full payment for these shares; on the next day Burroughs bought ninety shares in the University Associates from trustees who were owners of the same. On May 1, the plaintiff received from Burroughs similar notification of sale to him of seventy-five such shares; on the following day he paid for the same, and on the next day Burroughs bought that number of shares from other trustee owners. The plaintiff subsequently was notified that Burroughs had found a twenty-five share lot, but that the plaintiff must pay $76 per share for it. The plaintiff agreed. On May 21, notification similar to the others was sent to the plaintiff to the effect that Burroughs had sold him twenty-five shares at $76 per share. On the same day the plaintiff paid Burroughs in full for these shares, and on the next day Burroughs bought of still other trustee owners the twenty-five shares. In each instance Burroughs paid for the stock by check on his own bank account and, from the state of his balances, it is plain that he could not have paid in full but for the deposit to his account of the plaintiff's check. At this time Burroughs was a heavy borrower at the Old Colony Trust Com-

pany and had deposited with it various securities as collateral for his notes.   He frequently withdrew some of the securities thus pledged and substituted others therefor.   This had been the custom of dealing for a period of years and substitutions had been frequent and freely allowed.   On May 6, Burroughs presented to the Old Colony Trust Company the certificate for ninety shares of University Associates standing in the name of trustees, bearing no indorsement or assignment but accompanied by a properly executed power of attorney in favor of Burroughs signed by two of the trustees and bearing this further indorsement: "Papers approved for transfer.   O.K.   A.P.L., Jr."   With these papers was also a blank power of attorney for the transfer of ninety shares signed by Burroughs, without date or other detail.   All signatures were guaranteed by Burroughs.   He requested the Old Colony Trust Company to substitute this certificate for securities previously pledged by him on existing loans to him.   The substitution was approved by a representative of the trust company and the certificate accepted as collateral. On May 9, Burroughs presented to the Old Colony Trust Company the certificate for seventy-five shares of University Associates in similar condition with a like request and the same result followed as did with respect to the ninety share certificate.

At this time Burroughs was also a heavy borrower at the State Street Trust Company and had deposited various securities with it as collateral for his notes.   His custom with this trust company as to withdrawals of collateral and the substitution therefor of other securities was similar to that already described with the Old Colony Trust Company. When Burroughs got the certificate for twenty-five shares of the University Associates, he presented it to the State Street Trust Company and asked to substitute it for other securities held by that trust company as collateral to his indebtedness to it.   The papers finally were in substantially the same form as those already described as having been deposited with the Old Colony Trust Company.   They were accepted by the State Street Trust Company in substitution for other collateral thereupon released to Burroughs.

The indorsement by Augustus P. Loring, Jr. by his full name or by his initials was made after examination by him as one of the trustees of the University Associates, was meant to indicate that the trustees were satisfied that the record holders of the certificate had a right to sell it and that they, the trustees, would transfer the shares and issue a new certificate, and was intended to be relied upon by anybody reading the indorsement as carrying that signification.

Burroughs died shortly after these transactions without delivery of any certificates to the plaintiff or the repayment of his money. When Burroughs died he was heavily indebted to each of these trust companies, which then held and now holds the certificates heretofore described as delivered to each as part collateral for a loan still unliquidated.

Upon the point whether Burroughs acted in these transactions as broker or dealer, the master made these findings: Burroughs had for some years prior to this time conducted the greatest part of his business not as a broker but as a dealer. If one of his customers wanted one of the real estate stocks in which Burroughs specialized, he quoted a price, intended to be sufficiently above the price at which he could buy to insure himself a satisfactory profit. When his customer accepted the price quoted, Burroughs then went into the market and bought the stock as cheap as he could and kept the difference. If he could not get the stock at a price that gave him a profit, he would go back to the buyer and get him to raise his bid. When a customer wanted to sell, the method was reversed. The practice was to get as wide a spread as possible between the bid and asked prices and to conceal from each customer the price paid or received by the other. In only rare cases was stock bought or sold on a commission basis. The relation between Burroughs and his customers was that between buyer and seller or debtor and creditor. The transactions with the plaintiff were of this class. There was nothing in the circumstances of these transactions that should have given the plaintiff any warning of what was to happen. He acted with reasonable prudence and did what careful business men do many times each day. The stock at issue in this case was doubtless bought by

Burroughs for the purpose of reselling to the plaintiff. Burroughs at this time had no other University Associates stock in hand. Nothing was done to appropriate this particular stock to the order of the plaintiff. It might have been filled by Burroughs at any subsequent date by another block of the same stock. In fact, at this time the plaintiff had not given Burroughs the names in which the certificates were to be issued. When Burroughs presented this stock to the bank, legal title was unquestionably his.

The nature of property in a voluntary unincorporated association having transferable shares representing the beneficial interest and managed by trustees has been held to be equitable. *Peabody* v. *Treasurer & Receiver General,* 215 Mass. 129. *Baker* v. *Commissioner of Corporations & Taxation,* 253 Mass. 130, 138. See *Kennedy* v. *Hodges,* 215 Mass. 112. It is not the same as shares in a corporation. Such a trust is not a corporation and it is not organized under the laws of this Commonwealth. *Williams* v. *Boston,* 208 Mass. 397. *Williams* v. *Milton,* 215 Mass. 1. *Bouchard* v. *First People's Trust,* 253 Mass. 351, 355, and cases there reviewed. See *Hecht* v. *Malley,* 265 U. S. 144.

The finding by the master is direct and unequivocal to the effect that the relation between the plaintiff and Burroughs was that of buyer and seller or debtor and creditor. The rights of the parties rest on that foundation. When the contract for purchase and sale in each instance was made, the shares were not then ascertained. The contracts did not call for any particular shares. Burroughs might have procured them from any or several sources and delivered any shares he desired. Plainly no title passed at that time to the plaintiff. Burroughs had no title to pass to the plaintiff. It is an elementary principle of the common law as to sales that one cannot transfer title to property in which he has no title or interest. "To be able to sell property, he must have a vested interest in it at the time of the sale." *Low* v. *Pew,* 108 Mass. 347. *Taylor* v. *Barton Child Co.* 228 Mass. 126. When the plaintiff received the statements of sale from Burroughs and paid him, the latter had no title whatever to the shares. They were in each instance then

owned by third parties. It has been found that thereafter Burroughs did nothing to appropriate any particular stock to the order of the plaintiff. There is nothing in the record to impugn the correctness of this finding. Burroughs immediately appropriated all the shares of stock, as soon as received by him, to his own uses and made no move to set them apart for the plaintiff's benefit. Title to property not transferable at the date of the contract of sale does not pass until designated by some overt act of the seller for the buyer under the contract. *Chandler Grain & Milling Co.* v. *Shea*, 213 Mass. 398. *Brown* v. *Rushton*, 223 Mass. 80. When the plaintiff paid his money to Burroughs, that money became the property of the latter. The relation between the two was that of creditor and debtor. When Burroughs bought and took delivery of the shares, title passed to him. There was no relation of principal and agent. On the face of the papers Burroughs had the absolute title and could transfer it to anybody he chose. There was nothing about the papers when received by each trust company to put it on its guard as to the right of Burroughs to deal with them as his own. Of course, each trust company was put on its guard touching the title of Burroughs with respect to the trustees from whom he bought the certificates, but that difficulty was removed by the papers presented. Cases like *O'Herron* v. *Gray*, 168 Mass. 573, have no relevancy to the facts here disclosed. Cases like *Furber* v. *Dane*, 204 Mass. 412, and *Gifford* v. *Eastman*, 251 Mass. 520, where the relation of customer and broker existed, do not govern the relation of buyer and seller or creditor and debtor, which was that subsisting between the plaintiff and Burroughs.

It follows from what has been said that on the facts found no trust relation was created by the transactions between the plaintiff and Burroughs, which stands in the way of the rights of the trust companies. Cases like *Briggs* v. *Sanford*, 219 Mass. 572, are not pertinent. The trust companies took the shares in good faith for a valuable consideration from the one appearing on the face of the papers to be the owner, who in fact was the owner, and they are entitled to hold them.

*Interlocutory and final decrees affirmed in each case with costs of these appeals.*