L. CUSHING GOODHUE, administrator, *vs.* STATE STREET
TRUST COMPANY & others.

SAME *vs.* OLD COLONY TRUST COMPANY & others.

Suffolk.   January 21, 1929. — April 1, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, & WAIT, JJ.

*Sale,* Transfer of title, Of shares of unincorporated association.  *Pledge.*
*Estoppel. Equity Jurisdiction,* Specific performance.

A dealer sold a share in a certain real estate trust, sending to the pur-
chaser a statement of the sale on a printed "Sold" form.  At that
time the dealer owned no shares of that trust.  A few days later he
agreed with the owner of such a share upon a price at which he
would purchase it and the owner delivered to him a certificate of the
share indorsed in blank.  He gave a receipt therefor to the owner "To
be accounted for."  Two days later, without the knowledge of the
purchaser, he forwarded the certificate to the trust with directions
to transfer it into his name.  Before return of the new certificate
to him, he stated to the purchaser that he had the certificate ready for
transfer to the purchaser, who thereupon paid him the purchase price
and gave him instructions as to the person to whom the certifi-
cate was to be transferred.  Upon receipt of the new certificate by
the dealer, he pledged it to a bank.  At some time, without the
knowledge of the purchaser, entries were made in the dealer's books
showing the transmission of the certificate for transfer, "To be trans-
ferred to Name of . . . [the person specified by the purchaser]";
and showing the receipt of the new certificate, "Certificate Delivered
to . . . [the dealer]."  The interests of the beneficiaries under the
trust were represented by a number of such certificates, which were
transferable.  *Held,* that

(1) The certificate was not a chattel, but an equitable chose in
action representing the beneficiary's undivided interest in the property
held by the trustee: in connection with these transactions it should
be treated in the same manner as a share of stock in a corporation;
and, the certificate having been indorsed in blank, title to it passed to
the bank by delivery;

(2) Even if the certificate could be considered to be a chattel, no
title passed to the purchaser at the time the dealer agreed to sell it to
him because the dealer then had no title to it;

(3) Neither the entries in the dealer's book nor his statement
to the purchaser that he had the certificate ready for transfer showed
an intent on his part at that time to appropriate the certificate to the
purchaser when it should be received after transfer, notwithstanding
the payment by the purchaser;

(4) As between the bank and the purchaser, a contention by the purchaser that title passed to him by estoppel was without merit;

(5) The bank was entitled to the certificate as against the purchaser.
The dealer also agreed to sell twenty shares in another real estate trust at a time when he had no such shares. Two days later he agreed upon a purchase price with an owner of thirty shares, who delivered a certificate therefor to the dealer. The dealer receipted for the certificate and it was understood that, if he found a purchaser to whom he might sell at a price to yield him a profit, he would buy from the owner at his price and would so notify the owner, and that until such notice was given no sale to the dealer was intended. The next day the purchaser paid the dealer the purchase price for twenty shares. The dealer then had the certificate transferred into his name and pledged it to a bank. Thereafter he paid the owner for twenty shares. He never paid for the other ten shares, nor did he ever deliver any shares to the purchaser. The owner admitted that the dealer acquired good title to twenty shares, but contended that, as between himself and the dealer, he continued to be the owner of ten shares. The purchaser contended that he was entitled to twenty shares subject only to the claim of the bank. *Held*, that

(1) Even if the dealer intended to comply with the provisions of his contract with the purchaser, he could not have made an appropriation of the shares to the purchaser;

(2) No intent to perform his contract with the purchaser appeared; it appeared that his intent was to appropriate the shares to his own use;

(3) Title by estoppel did not pass to the purchaser;

(4) The owner was entitled to priority over the purchaser as to ten shares.

The dealer died insolvent. The shares last described were sold by the bank and, by agreement of all parties, the proceeds of the sale were held by it in lieu of the shares. The proceeds were more than sufficient to satisfy the claims of the bank and the owner. In a suit in equity by the administrator of the dealer's estate against the bank, the owner and the purchaser, seeking an accounting as to the shares, a final decree was entered directing that, after the claim of the bank was satisfied, the owner's claim be paid and the balance be paid to the plaintiff. Upon appeal by the purchaser, it was *held* that

(1) The purchaser was entitled to specific performance of his contract with the dealer, either as against the dealer or his representative;

(2) The decree should be modified by directing payment of the surplus to the purchaser instead of to the plaintiff.

Two BILLS IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on June 25, 1927.

The bills, cross bills, material facts found by a master to whom the suits were referred for hearing together, decrees thereafter entered by order of *Sanderson*, J., and appeals therefrom, are described in the opinion.

*R. Homans,* for the defendants Suter and others.

*C. P. Curtis, Jr.,* for the defendant Emmons.

*J. P. Wright,* (*R. G. Wellings* with him,) for the defendant Welch.

*A. F. Converse,* for the defendants trustees under the will of Baldwin.

*A. B. Carey,* for the defendant State Street Trust Company.

*J. Noble,* for the defendants executors of the will of Bacon.

*M. F. Hall,* for the plaintiff.

PIERCE, J.   These are two bills in equity brought by the administrator of the insolvent estate of George Burroughs, deceased, against the defendant trust companies, for an accounting of certain securities, or of the proceeds from a sale thereof, which Burroughs had pledged with them as collateral in substitution for other securities held by them as collateral, and to have them, or the proceeds of them, applied to the payment of loans made by the trust companies to the deceased, and the surplus turned over to the estate. All parties claiming any interest in the collateral were joined as parties defendant.   All the defendants filed answers, and several filed cross bills making claim to portions of the collateral or to the proceeds thereof.   All but the Bradley claimants admit priority rights in the trust companies, but they all deny any right in the administrator of the Burroughs estate or in other personal defendants to receive the surplus of the collateral.   The Bradley claimants seek to recover the proceeds of the sale of certain specific securities from the State Street Trust Company.   By stipulation all the securities have been sold and the proceeds held in the form of treasurer's checks. The cases were consolidated and referred to a master who filed a single report.   No objections were filed to the report and an interlocutory decree was entered confirming it.   A final decree in the case of the State Street Trust Company dismissed all cross bills except that of Augustus P. Loring, Jr. and Moses Williams, executors, and provided for the payment to them of the surplus after the satisfaction of the claim of the company against Burroughs.   A final decree, in the case of the Old Colony Trust Company, dismissed all cross bills

heard by the master except that of Augustus P. Loring, Jr.
and Moses Williams, executors, and provided, after the
satisfaction of the company's claim, for the payment of
$4,827.08 to the said executors; and further provided that
the balance, $2,393.48, be paid to the administrator of the
estate of George Burroughs. The administrator of the
Burroughs estate did not appeal from these decrees. The
cases come before us on appeal from the final decrees dis-
missing the cross bills of certain claimants including that of
Richards M. Bradley.

The facts taken from the master's report in substance are
as follows: George Burroughs, the plaintiff's intestate, was
killed on July 23, 1925. The administrator was appointed
and duly qualified on August 11, 1925. The estate is in-
solvent and has been so represented in the Probate Court.
For some years before his death Burroughs carried on busi-
ness under the name of Burroughs & Company. He had
no partner and his business consisted for the most part in
dealing in the stocks of trusts and corporations organized
to hold real estate. His dealings took this form: he would
find a customer who wished to buy or sell a particular real
estate stock at a given price; he would then hunt for one
who was ready to buy at a higher price or sell at a lower, as
the case might be, making his profit from the difference and
receiving no commission. He conducted almost all the
business of buying and selling real estate stocks that was
done in the city of Boston. In all the transactions herein-
after referred to he was represented by a man named Hast-
ings, who worked on a commission basis, receiving a per-
centage of the profits. Burroughs's financial standing was
such that prudent persons who sold him stocks would deliver
to him transferable certificates and wait patiently for their
money, and those who bought stocks from him would pay
him the purchase price and wait patiently for the delivery
of their certificates.

In the meantime Burroughs borrowed money from the
State Street Trust Company and from the Old Colony Trust
Company, and pledged with each as security various real
estate shares and stocks which he had obtained from cus-

tomers. "In one instance, stock so pledged had neither been bought nor sold by Burroughs but had been delivered to him by the owners in the hope that he might find a purchaser, in which event, Burroughs was to buy as usual on his own account." Two defendants, who filed cross bills, claim shares which they say Burroughs held for them and which he had pledged partly with one trust company and partly with the other; this fact made it impossible for the master to deal with each suit separately.

Six shares of Chicago Real Estate Trust pledged by Burroughs with the State Street Trust Company were claimed by Roland Gray, executor, and Richards M. Bradley, who says he bought all six of these shares acting as undisclosed agent for Amy Suter and others who are named as plaintiffs in the cross bill filed in the suit numbered 47,857 Eq. Gray filed a cross bill claiming the shares; his bill was dismissed. He has not appealed from the final decree and his claim is not now considered. Regarding these shares of stock the master, in substance, finds that on June 10, 1925, Gray agreed with Hastings upon the price per share for which Gray would sell the five shares he had. Gray delivered the certificate of these shares indorsed by him in blank to Hastings who gave a receipt therefor "To be accounted for." On June 11, 1925, Burroughs sent Gray a statement of the transaction and bought another share from Parkinson & Burr. On June 12, 1925, Burroughs sent the certificates and a certified copy of the will of Susan Greene Dexter and a certificate of Gray's appointment as executor thereunder, to the Chicago Title and Trust Company with directions to the transfer office to transfer the shares into the name of Burroughs & Company. This Burroughs did without the knowledge or authority of Bradley or of Bradley's undisclosed principals. On June 22, 1925, the shares were transferred in accordance with Burroughs's directions and on June 26 he received from Chicago two new certificates, one for five shares, the other for one share, and both in the name of Burroughs & Company. On June 30, 1925, Burroughs pledged these certificates with the State Street Trust Company. He never paid Gray for the five shares obtained from him.

Sending statements on the regular printed "Sold" form to Richards M. Bradley, Burroughs & Company sold Bradley on June 8, 1925, two shares, on June 9, 1925, three shares, and on June 10, one share of the Chicago Real Estate Trust. The master found that unquestionably the six shares with which Burroughs intended to fulfil his contract with Bradley were those bought of Gray and of Parkinson & Burr; and further found that at this time Burroughs had no other shares or certificates of the Chicago Real Estate Trust in his possession. It further is found that on June 20, eight days after the old certificates were mailed to Chicago, two days before the actual transfer, and six days before Burroughs received the new certificates, Hastings in a conversation with an agent of Bradley about the shares of the Chicago Real Estate Trust Bradley had bought, and in respect to paying for them, told the agent that Burroughs had the certificate ready for transfer; that Bradley at once paid Burroughs the purchase price and instructed him as to how the four shares which he had bought for his five daughters were to be transferred because he believed that Burroughs had the certificate or certificates ready for transfer. It is obvious, as the master finds, that Burroughs might have had the six shares transferred into the name of Richards M. Bradley or the names of his appointees at any time after June 11, and either before or after they were transferred into the name of Burroughs & Company and until he pledged them with the State Street Trust Company on June 30, 1925.

It appears by the declaration of trust of the Chicago Real Estate Trust, a copy of which is appended to the master's report, that the interest of the beneficiaries shall be represented by transferable receipts, called by the master certificates, and that all property held by the trustees at the termination of the trust shall be sold and the proceeds divided among the "receipt-holders"; it further appears that the trustees may create a contingent fund or sinking fund in interest-bearing securities. The master finds that the greater part of the property in the trust was real estate but the trust owned about $500,000 in personal property. Under the agreement, the trust included real and personal property in

one fund which was to be treated as personal property from the beginning, because of necessity all must be converted into personalty from the beginning in order to be one fund. *Dana* v. *Treasurer & Receiver General,* 227 Mass. 562. *Priestley* v. *Treasurer & Receiver General,* 230 Mass. 452. *Baker* v. *Commissioner of Corporations & Taxation,* 253 Mass. 130. Transferable receipts, sometimes called certificates in a voluntary unincorporated association, are equitable choses in action bearing a close resemblance to certificates of stock in a corporation in that, like stock certificates, they "are the basis of commercial transactions large and small, and are frequently sold in open market as negotiable securities are." *National Safe Deposit, Savings & Trust Co.* v. *Hibbs,* 229 U. S. 391, 394, 395. *Herman* v. *Connecticut Mutual Life Ins. Co.* 218 Mass. 181. In this respect the master specifically found that it "is the custom of banks and trust companies in the city of Boston to receive as collateral for loans, certificates for shares of real estate trusts like the Chicago Real Estate Trust standing in the names of brokers, bankers or dealers and indorsed by them in blank whenever the person so indorsing and delivering a certificate is known to the bank or trust company to be responsible." The "receipts" and the "certificates" are not chattels; they are but evidence of intangible rights which have some of the characteristic qualities of chattels. The certificate holder is at least the owner of an undivided equitable interest in the property held by the trustee. There is in principle in this respect no distinction between such certificates and certificates for shares in a domestic corporation. *Kennedy* v. *Hodges,* 215 Mass. 112. *Coolidge* v. *Old Colony Trust Co.* 259 Mass. 515. A contract for sale or the sale of "receipts" or "certificates" is not governed by the uniform sales act (G. L. c. 106) except as that act (§ 6) provides a statute of frauds; and it is obvious that such "certificates" are not "document[s] of title" within the meaning of G. L. c. 106, § 65 (1). Treating the certificates as equitable choses in action, title to the interest represented by them in the association or corporation would pass by assignment and delivery of them or, if the certificate was indorsed in blank, by delivery.

Considering the certificates of shares which Burroughs held on June 11, 1925, and contracted to sell to Richards M. Bradley on June 8, 9 and 10, as chattels, the Bradley claimants contend that title passed to them on June 12 or on June 20, 1925, because on the facts found by the master "there was an appropriation by an overt act of the seller of the six shares in question to the satisfaction of their contract of purchase and sale, and that as between them and Burroughs, title to these specific shares passed." The facts relied on to show an appropriation in fact, as distinguished from an intention to appropriate, are certain entries in the "In and Out" book of Burroughs & Company. The entries show certificates for five shares and one share received on June 11, 1925, and a delivery to the Chicago Title and Trust Company for transfer on June 12, 1925. Opposite the heading "To be Transferred to Name of" are the entries "5 Burroughs & Co.," "1 Burroughs & Co." Beneath this are the notations: "1 Emily B. Wesselhoeft. 1 William F. Wesselhoeft and Richards M. Bradley, Trs. u/w William P. Wesselhoeft for benefit of William F. Wesselhoeft. 4 R. M. Bradley & Co." Under the principles of the common law no title to the shares passed to the Bradley claimants at the time Burroughs contracted to sell the stock to Bradley, for the reason that Burroughs had no title to the stock or interest in it which he could pass. *Low* v. *Pew*, 108 Mass. 347. So, also, of the time Bradley received the statements of sale from Burroughs; he then had no title or interest in the stock of the association or in any ascertained shares. Under the heading "Certificate Rec'd from Transfer Office" the entries show that these certificates were received by Burroughs & Company on June 26, 1925, and under the heading "Certificate Delivered to," the entries show that they were delivered "5" shares to Burroughs & Company and "1" share to Burroughs & Company. The names set down in the entries are names into which Bradley instructed Burroughs to transfer the certificates which Burroughs had contracted to sell and Bradley to buy. The master specifically finds as to these entries that "Neither Bradley nor those for whom he was acting knew that Burroughs had made these entries in his

books." The master makes no finding and it does not otherwise appear in the record when these entries were made.

In case the entries in the book do not show an intent to pass title to the unascertained shares at some time after their receipt by Burroughs on June 11, and before they were sent to Chicago on June 12, the Bradley claimants contend that there was an appropriation and passing of title on June 20, by reason of the declaration that they were in the possession of Burroughs ready for delivery. As a fact the certificates on June 20 were in Chicago with instructions to put them in Burroughs's name. The master finds that what Hastings told Bradley's agent, Gifford, on June 20 about having the certificates ready for transfer was true in the sense that Burroughs had obtained transferable certificates, but that physically the certificates were in Chicago. The conversation on June 20, 1925, did not show a present intent on the part of Burroughs to appropriate the particular stock when received from Chicago to the order of Bradley; indeed the whole evidence shows an intent not to appropriate the stock to the order of Bradley, which is not overcome by the fact that Bradley paid Burroughs in the belief that the title to the stock was to be immediately transferred to him. *Coolidge* v. *Old Colony Trust Company, supra.*

Assuming a finding by this court that there was no appropriation of shares to the order of the Bradley claimants, they contend that title by estoppel passed to Bradley or to his undisclosed principals, citing Williston on Sales (2d ed.) § 131. There is no doubt that such a contention would have force if the controversy were between Burroughs and Bradley. The rule applicable to sales of personal property in the circumstances here disclosed is stated in *Lanfear* v. *Sumner*, 17 Mass. 110, 113, as follows: "The general rule is perfectly well established, that the delivery of possession is necessary in a conveyance of personal chattels, as against every one but the vendor. When the same goods are sold to two different persons, by conveyances equally valid, he who first lawfully acquires the possession, will hold them against the other." The "delivery required by the rule . . . is delivery in its natural sense, that is, a change of possession." *Hallgarten* v. *Oldham,*

135 Mass. 1, 9.   G. L. c. 106, § 27.   *Tripp* v. *National Shaw-mut Bank,* 263 Mass. 505, 512, 513.   The doctrine of *Lanfear* v. *Sumner* is applicable to choses in action represented by tangible documents.   *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90, 98.   As respects the pledge of the six shares on June 30, 1925, the master finds that the "State Street Trust Company accepted the six shares of Chicago Real Estate Trust in the ordinary course of business as collateral in substitution for collateral of equal value and without notice of the transactions between Bradley and Burroughs & Company."   It follows that not only did the Bradley claimants not get title by estoppel as against the State Street Trust Company but that the latter is entitled to the shares of stock as against the former.

None of the other personal defendants claim priority over either trust company.   They do claim priority over the Burroughs estate and over each other.   The final decree in each case directed the defendant trust company to pay to Loring and Williams, executors, an amount not exceeding the proceeds of five shares of the Boston Real Estate Trust out of the proceeds of collateral remaining after satisfying Burroughs's debt and the trust company's expenses in litigation to protect the collateral.   Loring and Williams owned thirty shares of the Boston Real Estate Trust in the form of a single certificate in the name of their testatrix, Ellen S. Bacon.   They wanted to sell these shares and, having named a price they would take for the whole or part, on June 10, 1925, delivered the certificate to Burroughs's agent, Hastings, with a signed power to transfer and the necessary probate certificates to show their authority so to do.   Burroughs & Company merely receipted for the same.   The master found that Burroughs in the transaction acted as a dealer, not as a broker, and that "It was understood that if he found a buyer or buyers at prices which would yield him a satisfactory profit, then he, personally, would buy from the executors at the price named by them and would notify them to that effect.   Until such notice was given no sale to Burroughs was intended.   He was simply entrusted with the transferable certificate in order that he might split it up into

smaller lots, if he saw fit, and to facilitate and expedite sales if he could make them."

On June 8, 1925, Burroughs agreed with one Brewster, acting as agent for Elizabeth W. Emmons, one of the defendants, to sell twenty shares of the Boston Real Estate stock and the purchase price was paid by Brewster on June 11, 1925. On June 8 Burroughs had no Boston Real Estate Trust shares. He "got the transferable certificate from Loring without making any absolute agreement to buy the whole or any part of the thirty shares and without saying anything about his having already sold twenty shares to Miss Emmons. Burroughs immediately got the stock transferred into the name of Burroughs & Company, taking six new certificates for five shares each." On June 13 he pledged ten shares represented by two certificates with the State Street Trust Company and five shares (one certificate) with the Old Colony Trust Company. On June 15 Burroughs pledged five shares (one certificate) with the State Street Trust Company and ten shares (two certificates) with the Old Colony Trust Company. On June 19 he bought twenty shares of the executors of Ellen S. Bacon and paid them $18,844.78 or a little over $940 a share. Burroughs never bought of the executors or paid them for any more shares and never delivered any shares to Mr. Brewster for Miss Emmons, or to Miss Emmons. On these facts the executors contend that no title to the thirty shares which they delivered to Burroughs passed to him at the time of delivery; and that if he got a good legal title when he had them transferred into his own name he held them on an implied trust. They admit he got a good title, legal and equitable, to twenty of the shares when he bought and paid for them on June 19, but contend, as between Burroughs and themselves, that they continued to be and are now the owners of the remaining ten shares.

Miss Emmons claims twenty shares of the thirty pledged as her property, in law and in equity, subject only to the prior claims of the two banks on their respective notes. She contends that legal title to twenty of these shares passed to her forthwith upon their acquisition by Burroughs from Lor-

ing and Williams, under the doctrine of title by estoppel, citing in support of her claim Williston on Sales (2d ed.) § 131; and she relies on her right to specific performance of Burroughs's agreement to sell these twenty shares contained in his statement of June 8, 1925. The fact that Burroughs "intended to satisfy his contract to sell to Miss Emmons with shares which he could purchase from the executors" is of no consequence. His intention "was not communicated to Miss Emmons or to her agent, Mr. Brewster." His agreement to sell and her agreement to buy were not confined to any particular shares. He could have performed the contract by delivering any twenty shares of the same stock. There was no appropriation of any of the shares of Loring and Williams to Miss Emmons' purchase; he had no right or title to those shares when his agreement with Miss Emmons was made. "As soon as Burroughs got Loring and Williams' certificate, he *appropriated* all the shares of stock that it represented to his own use. He made no move to set any of them apart for Miss Emmons. He transferred none of them into her name. He took all of them in his own name. No doubt he did this with deliberate intent to appropriate them to his own use. At any rate, before he had any right to them (not yet having paid for them), he did appropriate them to his own use by pledging them with the trust companies. That was done June 13 to 15. Until June 19, when he paid for them, he had no right, as against Loring and Williams, to appropriate them to Miss Emmons or to anybody else. After June 13 to 15 he had no right or power to appropriate them to Miss Emmons as against the banks, who then held them in pledge. Therefore, even if the entries in the 'in-and-out' book under date of June 19 could have any effect as a 'constructive appropriation' of shares which Burroughs would have been free to dispose of, they could have no effect on these particular shares." The doctrine of estoppel found in *Loring* v. *Goodhue*, 259 Mass. 495, does not under the facts of this case extend so far as to estop Loring and Williams as against Miss Emmons, since neither Miss Emmons nor those acting for her ever saw these certificates or ever knew from what source Burroughs was to obtain the shares to satisfy his con-

tract with her. It follows that, as against Miss Emmons, Loring and Williams are entitled to priority because, whatever equitable interest Miss Emmons may claim, it is subject to the prior equitable interest of the executors of the will of Ellen S. Bacon.

The only further collateral in the hands and possession of the State Street Trust Company now in dispute is thirty shares of The Commercial Wharf Company, a Massachusetts corporation, whose shares are seldom dealt in and whose stock cannot readily be obtained by one who wants to buy, or be disposed of by one who wants to sell. This stock or the proceeds thereof is claimed by E. Sohier Welch. The facts in respect thereto, as found by the master, are in substance as follows: On June 11, 1925, Burroughs bought of Loring and Williams, executors, one hundred shares of the stock and paid them therefor. He had the shares transferred immediately into the name of Burroughs & Company, getting three certificates for fifty shares, thirty shares, and twenty shares, respectively. On June 13 he pledged the fifty shares with the Old Colony Trust Company, and the thirty shares with the State Street Trust Company. On June 4, before he had made any actual purchase of this stock, he agreed to sell eighty shares to Welch and twenty shares to one Smith, and sent each a "Sold" note. Smith paid for his twenty shares on June 5 and got them on June 16, after they had been transferred into the names of five appointees. Welch paid for his eighty shares the whole purchase price of $17,440 on June 10. "Shortly before this Welch had given Burroughs directions, which Burroughs entered in his book, in respect to the persons in whose names the certificates were to be issued and the number of shares each was to receive . . . and Burroughs sent Welch a memorandum of these directions to show that he (Burroughs) had received and understood them. Burroughs did not have sufficient funds on deposit to pay for the eighty shares which he bought from the Bacon estate in order to satisfy his contract with Welch until he got the $17,440 from Welch." Burroughs's office made false statements to inquiries of Welch in respect to the whereabouts of the shares which Welch had bought and paid for, and Burroughs died

on July 23, 1925, never having delivered said eighty shares of stock to Welch but having pledged the same with the Old Colony Trust Company and the State Street Trust Company as security for his notes held by the trust companies.

Welch also claims seventy-five shares of Factory Building Trust as against the administrator, but admits the priority of the lien of the Old Colony Trust Company, which held them as collateral for notes of Burroughs at the time of his death.    The master finds that "This case is on all fours with the Commercial Wharf shares case except that the Factory Building Trust is not a corporation."    The contentions of Welch are that the contract in each of these transactions was one for the sale of future goods, G. L. c. 106, § 65 (1), Williston on Sales (2d ed.), § 137; that future goods must be appropriated to the contract in order to pass title to the buyer, G. L. c. 106, § 21, Rule 4 (1); that there was an appropriation and that Welch assented to it.    He also contends that he is entitled to specific performance of his contracts for these shares, if no actual sales are found.    It is sufficient to say that what has been said in connection with the Bradley claimants respecting the acquisition of title to the shares claimed by them applies with equal force here.    There was no appropriation of the stock to the contracts in question and the legal title remained in Burroughs.    Whatever Welch's right to specific performance may be he cannot prevail over Loring and Williams in respect to the balance remaining in the hands of the State Street Trust Company, they having retained legal title to the shares claimed by them.

The defendant Joseph Morrill and other trustees under the will of George S. Baldwin claim four shares of Boylston Market Association.    These shares were pledged by Burroughs with the Old Colony Trust Company.    Burroughs, on June 8, 1925, bought of the Old Colony Trust Company four shares of The Boylston Market Association, standing in the name of one Scofield, for the purpose of transferring them to these defendants in fulfilment of a contract which he had made with them three days before.    He received payment for them on June 8 or 9, and entered in his book the names of the defendants as the persons to whom "these four shares

were to be transferred." On July 13 he pledged the shares which then stood in the name of Burroughs & Company with the Old Colony Trust Company. On July 14 he wrote Morrill, "We are enclosing herewith our check for $70 in payment of the dividend of $17.50 per share paid to stockholders of record July 6th on 4 shares Boylston Market Association recently purchased by you." "Burroughs owned no other shares of this stock and the Scofield shares were those on which the dividend was paid to him. The Boylston Market Association shares were not listed on any exchange and sales of them were very rare. They were not sold even as often as shares of the Boston Real Estate Trust." These defendants contend that Burroughs had appropriated this stock to them notwithstanding his pledge of the same to the Old Colony Trust Company, that he held it upon an implied trust for them; that they are entitled to specific performance of their contract; and that their rights to the stock or its proceeds are superior to the rights of the decedent's legal representatives and his general creditors. In all material respects the above facts are similar to the facts presented in the claim of Miss Emmons; and the rights of these claimants against the surplus in the Old Colony Trust Company account stand in no better or different position than the claims of Miss Emmons, Bradley and Welch stand in respect to the surplus of the State Street Trust Company.

After the claims of the Old Colony Trust Company and of Loring and Williams are paid, there remains a balance which the single justice of this court ordered to be paid to Burroughs's administrator. Miss Emmons, Morrill and Welch contend to be entitled in priority to Burroughs's administrator. It is clear that no trust relation existed between those claimants and Burroughs. *Coolidge* v. *Old Colony Trust Co.*, *supra*, at page 522. The master found in substance as to each kind of stock which was bought and paid for by these claimants that it was not readily obtainable in the market and that it was rarely that it was sold. Had Burroughs not died the claimants would have been entitled to specific performance of their contracts, subject to his pledge to the Old Colony Trust Company. *Adams* v. *Messinger*, 147

Mass. 185. The fact that the shares were not specific or were unascertained is not a conclusive reason for refusing them this remedy. *Todd* v. *Taft,* 7 Allen, 371. *Hurley* v. *Brown,* 98 Mass. 545, 547. *Dresel* v. *Jordan,* 104 Mass. 407, 414, 416. A deceased's representatives can be ordered by a court of equity specifically to perform a contract to sell shares made by the deceased in his lifetime. *New England Trust Co.* v. *Abbott,* 162 Mass. 148. *Early* v. *Moor,* 249 Mass. 223. Burroughs's legal representatives have no greater rights or immunities than he himself would have if living. *Harriman* v. *Tyndale,* 184 Mass. 534. *Federal National Bank of Boston* v. *Gaston,* 256 Mass. 471, 478. Insolvency has been held to be a good reason for decreeing specific performance on the ground that there can be no adequate legal remedy against an insolvent. *Clark* v. *Flint,* 22 Pick. 231, 238. We are of opinion that Elizabeth W. Emmons, Joseph Morrill and others, and E. Sohier Welch should have specific performance of their contracts with George Burroughs.

The master states that the trust companies hold the proceeds of sales of the shares in lieu of the shares themselves, with the consent of the claimants and on the understanding that "it should be without prejudice, the proceeds to be held by the trust company in lieu of the shares themselves." This being so, all parties having been heard, it follows that the decree in the case of Goodhue *v.* Old Colony Trust Company should be modified and the balance which was ordered to be distributed to Burroughs's administrator should be distributed *pro rata* to the claimants Elizabeth W. Emmons, Joseph Morrill and others, trustees, and E. Sohier Welch, in the proportion in which the shares claimed by them or the proceeds thereof are in the hands of the Old Colony Trust Company. As thus modified the interlocutory and final decrees are affirmed. In the case entitled Goodhue *v.* State Street Trust Company, the interlocutory and final decrees are affirmed with costs, subject to such changes in the amounts to be retained by the State Street Trust Company and to be paid to Augustus P. Loring, Jr. and Moses Williams, executors under the will of Ellen S. Bacon as may be determined by a single justice of this court in the allowance

of further sums to the State Street Trust Company by way of reimbursement for expenses in the litigation to protect its collateral from the date of the final decree November 13, 1928, to the entry of the rescript herein.

*Decrees accordingly.*