AUGUSTUS P. LORING, JR. *vs.* LAMSON & HUBBARD CORPORATION.

Suffolk.    March 6, 7, 1924. — May 23, 1924.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & CARROLL, JJ.

*Contract*, What constitutes, Construction, Validity.    *Corporation*, Issuance of shares of stock.

The holder of five shares of preferred stock in a Canadian corporation sought by a bill in equity to compel a Massachusetts corporation to transfer to him five shares of preferred stock of the defendant in accordance with a vote, which had been passed by the directors of the defendant more than four years before the commencement of the suit to facilitate the sale of the preferred stock of the Canadian corporation and was to the effect that the defendant would exchange, with any holders of preferred stock of the Canadian corporation, shares of the preferred stock of the defendant, share for share, at any time before a date which had not arrived at the time of the commencement of the suit.   It appeared that the plaintiff had purchased his stock less than three months after the passage of the vote above described and in reliance thereon, that the stock thus purchased at that time had a book value of at least $100 per share, and that, at the date when he demanded the exchange of stock by the defendant, the book value, as well as the intrinsic value, of his stock was nothing, while the book value of the defendant's stock was $69 per share and its market value $17 per share.   The agreement of association in accordance with which the defendant was incorporated provided that, after an original issue (which had been made) no further preferred stock should be issued other than for cash or to purchase the preferred stock of a certain named corporation, not the Canadian corporation, at not exceeding par for par, or for acquiring new property at not exceeding the book value for the new property. *Held*, that

(1) The fundamental purpose of St. 1903, c. 437, §§ 11, 14, 42, (now contained in G. L. c. 156), was to prevent the issuance of capital stock for less than par, and a conveyance of preferred stock of the defendant

to the plaintiff in exchange for the stock in the Canadian corporation share for share would be a violation of such statutory provisions;

(2) At most, the vote of the defendant's directors to exchange stock of the defendant for stock of the Canadian corporation was an agreement for an option and no right in the property of the defendant could arise unless and until the plaintiff exercised the option;

(3) No trust was imposed on any shares of the defendant's preferred stock in favor of the plaintiff when he purchased his shares of the preferred stock of the Canadian corporation relying on the vote of the defendant's directors;

(4) If stock of the defendant were issued to the plaintiff as demanded by him, such action would be in contravention of the agreement of association in accordance with which the defendant was incorporated;

(5) The suit must be dismissed.

BILL IN EQUITY, filed in the Superior Court on April 10, 1923, to compel the defendant to issue to the plaintiff a certificate for five shares of the defendant's preferred stock in exchange for five shares of preferred stock of Lamson and Hubbard Canadian Company, Limited.

The suit came on to be heard in the Superior Court before *Sanderson,* J., upon the pleadings and an agreed statement of facts. Material facts are described in the opinion. The judge reported the case for determination by this court, " such decree to be entered as justice and equity require."

*J. Noble,* for the plaintiff.

*J. N. Clark,* for the defendant.

DeCOURCY, J. The plaintiff by this bill in equity (filed on April 10, 1923), seeks to compel the defendant, a Massachusetts corporation, to issue to him a certificate for five shares of its preferred stock, in exchange for five shares of preferred stock of Lamson and Hubbard Canadian Company, Limited, in pursuance of a vote of the defendant's board of directors passed on January 27, 1919. Before considering the legality of that vote, the essential facts agreed upon must be summarized.

The defendant corporation was organized under the laws of this Commonwealth on January 15, 1918, with an original authorized capital of $10,000,000, one half of which was fifty thousand seven per cent preferred shares of the par value of $100 each. Its corporate purpose at the date of said vote, and when the plaintiff bought his stock in the

Canadian company (April 15, 1919), was dealing in furs, and included fur hunting and manufacture. It was intended to be both a holding and an operating company. In February, 1918, it purchased a fur-trapping and trading business in Canada. In November, 1918, the Lamson and Hubbard Canadian Company, Limited, was organized under Canadian law, with an authorized capital of six thousand shares of preferred and eighteen thousand shares of common stock. All of said assets in Canada were transferred in December, 1918, by the defendant to this Canadian company in return for the six thousand shares of the latter's preferred and twelve thousand shares of its common stock. Although the preferred stock of the Canadian company was later increased, the conversion privilege voted by the defendant, and later herein set forth, was confined to the original six thousand shares.

In December, 1918, the defendant also owned all the common stock and apparently five thousand and forty-nine shares of the preferred stock of the Lamson and Hubbard Company, a Massachusetts corporation, which operated the business carried on in Boston for many years by Lamson and Hubbard. The defendant was also indebted to that company in a sum estimated at $196,000. A written agreement was made between these two Massachusetts corporations, dated January 20, 1919, providing among other things that the six thousand shares of Canadian preferred stock should be deposited with the Lamson and Hubbard Company as collateral security for said indebtedness; that eight thousand shares of the Canadian common stock should also be transferred by the defendant, — two thousand of which were to go into the Canadian company's treasury, together with all the Canadian preferred stock pledged as collateral in excess of such amount as, reckoned at $90 per share, would equal the amount of the defendant's indebtedness to the Lamson and Hubbard Company. The defendant also was to undertake the sale of said Canadian preferred and common stock: the price of the preferred to be ninety, and the usual commissions not exceeding five points to be allowed. Subsequently it was found that the amount due

from the defendant to the Lamson and Hubbard Company was $245,000, and the agreement of January 20, 1919, was modified. By mutual consent the six thousand shares of Canadian company preferred were not deposited as collateral; but four thousand of said shares and four thousand shares of its common stock were sold for $360,000, the proceeds used to pay the defendant's debt to the Lamson and Hubbard Company, and the balance retained or applied for the benefit of the defendant; and two thousand shares of the Canadian preferred and four thousand common were transferred direct to that company as treasury stock, and later the proceeds of the sales thereof were applied for its benefit.

Meanwhile, on January 27, 1919, at a duly held meeting of the directors of the defendant, there occurred the following, according to the minutes: " It was reported to the meeting that the sale of the preferred stock of Lamson & Hubbard Canadian Company, Limited, could be more readily made, the sale of the stock being for the purpose of financing the Company, in which this Corporation owns the control, if the Corporation should agree to exchange its own preferred stock for the preferred stock of Lamson & Hubbard Canadian Company, Limited, share for share, with an adjustment of interest, the same being recommended by the Executive Committee. . . .

" Thereafter, upon motion duly made and seconded,

" Voted: That this Corporation exchange with any holders of Lamson & Hubbard Canadian Company, Limited, who may desire it, preferred stock of this Corporation for preferred stock of Lamson & Hubbard Canadian Company, Limited, share for share, with an adjustment of interest at any time on or before January 1, 1924.

" Further,

" Voted: That the President and Treasurer of the Corporation be authorized to carry out the purposes of the foregoing vote, and to announce to the holders of the preferred stock of Lamson & Hubbard Canadian Company, Limited, that the same may be exchanged for preferred stock of Lamson & Hubbard Corporation at any time within five years from January 1, 1919, share for share, such endorse-

ment as may be necessary to carry out the stipulation to be authorized upon the preferred stock certificates of Lamson & Hubbard Canadian Company, Limited.

" Voted: That the officers of the Company be authorized to certify to the Commissioner of Corporations an issue of stock of 6,000 shares preferred to be held for the purpose of exchanging for Lamson & Hubbard Canadian Company, Limited, preferred stock, as authorized by the foregoing vote in relation thereto."

Thereafter the defendant authorized the publication of the conversion privilege by the bankers engaged to sell the Canadian shares, and a notation of it was stamped on some of the certificates for shares they sold. The plaintiff's five shares were bought from said bankers, on April 15, 1919, in reliance upon the vote and stipulation of the defendant for the exchange of shares, and he would not otherwise have purchased them. His shares were part of the original six thousand preferred shares. On April 9, 1923, he tendered his Canadian certificate, but the defendant refused to make the exchange. On January 27, 1919, and when the plaintiff bought, the Canadian preferred stock had a book value of at least $100 per share, and there were sales in the open market at that price. On April 9, 1923, its book value was nothing, and the intrinsic value the same. On this last date the book value of the defendant's preferred stock was $69.33 per share, and the market value $17.

In substance, then, the plaintiff seeks to compel the defendant to issue to him five shares of its preferred stock in return for five shares of the capital stock of a foreign corporation which are now of no value. If that were all, clearly the defendant could not legally issue new shares of its stock for such a consideration. Under the business corporation law in force during the period involved (St. 1903, c. 437, §§ 11, 14, 42, now G. L. c. 156, §§ 10, 15, 44, etc.) stock could be issued only for cash at par, property, services or expenses. Even if the rights of the plaintiff accrued when he bought the Canadian stock in April, 1919, as he contends, the defendant then received substantially less than par for the Canadian preferred shares owned and sold by it, and to which the con-

vertible privilege was attached.    The fundamental purpose of the statute is to prevent the issue of capital stock for less than par.

In support of his contention that his right to become a stockholder of the defendant became a contract binding on the defendant when he purchased the Canadian stock in April, 1919, the plaintiff relies upon certain authorities which in our opinion do not sustain his claim.    In *Price* v. *Minot*, 107 Mass. 49, the agreement to give three hundred shares of stock to Price if he should remain in the service of the corporation was made by Minot, who owned a controlling interest therein.    The corporation was not a party, and the agreement related to shares owned by Minot; not to an original issue for the purpose of paying Price for his services, in stock.    So in *Cortelyou* v. *Imperial Land Co.* 156 Cal. 373, the stock involved was part of an issue already made; and no attempt was made to exchange something for a completely new issue of stock.    In *Pratt* v. *Taunton Copper Manuf. Co.* 123 Mass. 110, the plaintiff was a stockholder whose shares had been stolen, and a power of attorney to transfer had been forged.    See also *Sewall* v. *Boston Water Power Co.* 4 Allen, 277.    *Hood Rubber Co.* v. *Commonwealth*, 238 Mass. 369, 372, recognizes that the issuance of a certificate merely gives evidence of a property interest in a corporation, which could be enforced even though no certificate of stock were issued. Plainly the purchase of the Canadian stock of itself gave the plaintiff no immediate property interest in the Massachusetts corporation, even before he elected to surrender his shares in the Canadian corporation.    Nor do the cases of *Hawes* v. *Anglo-Saxon Petroleum Co.* 101 Mass. 385, and *Bellows Falls Power Co.* v. *Commonwealth*, 222 Mass. 51, involving the nature of shares of stock, sustain the plaintiff's contention as to his rights accruing when he bought the Canadian stock.    At most the vote of the defendant's directors to exchange stock in the company for Canadian shares, was an agreement for an option: no right in the property of the defendant would arise unless and until the plaintiff exercised the option.    As was said in *Thacher* v. *Weston*, 197 Mass. 143, 147: " Certainly before such notice

[to buy] the duty owed by the defendant to the plaintiff was simply to hold herself ready to convey the property to the plaintiff when he paid the purchase price. The contract gave him no interest in the property. She remained the owner as before, and the only thing he had was the contract for an option."

Nor can we accept the argument of the plaintiff that a trust was imposed on the six thousand shares of the defendant's preferred stock. In *Wait* v. *Kern River Mining, Milling, & Developing Co.* 157 Cal. 16, relied upon in support of this contention, one Latham had agreed to pay the plaintiff for certain services two hundred and fifty thousand shares " of his own stock." Although most of the stock had not been issued, and the court held that the corporation was a mere trustee thereof, the owner was Latham, and the transaction was essentially one between two individuals. In the case at bar the plaintiff was not obliged to exchange his Canadian stock for that of the defendant. When he attempted to do so, it was more than four years after the beginning of the option period. See *Bulkeley* v. *New York, New Haven & Hartford Railroad,* 216 Mass. 432; *Pratt* v. *American Bell Telephone Co.* 141 Mass. 225, 230.

In addition to violating the Massachusetts law forbidding the issue of stock for less than par, there is apparently the further objection to the issue sought by the plaintiff that it would be in contravention of the defendant's agreement of association. It was provided in the articles of organization that " after the initial issue of one million dollars par value of the preferred stock of the Company no further preferred stock shall be issued other than for cash or to purchase the preferred stock of Lamson & Hubbard Company at not exceeding par for par or for acquiring new property at not exceeding the book value of said property . . . " When the directors of the defendant corporation, on January 27, 1919, voted the six thousand preferred shares, to be exchanged par for par for the Canadian preferred stock, it appears that there were actually outstanding preferred shares of the defendant corporation much in excess of $1,000,000. Accordingly any additional preferred shares issued after

January 27, 1919, would obviously contravene said agreement of association unless issued as above stated. See *Page v. Whittenton Manuf. Co.* 211 Mass. 424, 427. Without further discussion of this objection, and confining ourselves to the facts disclosed by the record, we are of opinion that this bill seeking to compel the defendant to issue to the plaintiff five shares of its preferred capital stock in exchange for his five preferred shares of the Canadian company, must be dismissed, with costs.

*Ordered accordingly.*