The New England Trust Company *vs.* John T.
Spaulding & another, executors, & others.

Suffolk.     February 4, 5, 1941. — December 30, 1941.

Present: Field, C.J., Qua, Cox, & Ronan, JJ.

*Corporation*, Transfer of shares. *Contract*, Death of party. *Executor
and Administrator*, Limitation of actions, Claim against estate, Con-
tract of decedent, Stock of decedent. *Limitations, Statute of*. *Trust
Company*, Transfer of shares. *Equity Jurisdiction*, Specific per-
formance, Laches. *Tender*. *Value*. *Laches*.

An agreement by a purchaser of corporate stock to conform to the by-
laws of the corporation, one of which, printed on the stock certificate,
provided that on his death the executor of his will, upon demand
by the corporation, must transfer the stock to it at a price appraised
by the directors, was binding upon the executor when he acquired
the stock upon the stockholder's death.

The right of a corporation under a by-law to require the executor of the
will of a stockholder, upon demand, to transfer the testator's stock
to it at a price appraised by the directors did not make the corpora-
tion a creditor within G. L. (Ter. Ed.) c. 197, § 9, as amended by
St. 1933, c. 221, § 4; and a suit to enforce such right was not barred
although it was commenced more than one year after the executor
qualified.

Nothing in G. L. (Ter. Ed.) c. 155, § 40, prevents a trust company from
enforcing by-law provisions, printed on its stock certificates, requir-
ing the offering of the shares to the corporation at an appraised price
before sale elsewhere.

Under a by-law of a corporation requiring transfer of a deceased stock-
holder's stock to it upon payment of a price appraised by the direc-
tors "and the dividends due thereon," where both "regular" and
"special" dividends payable to stockholders of record on a January
1 were paid by the corporation to the stockholder's executor and no
further dividends were due until several months later, there was no
insufficiency in a tender to the executor of the amount of an appraisal
made by the directors in good faith on January 12, which included a
certain sum "plus interest on par of the stock" from January 1 to
January 12 at a rate the same as the rate of the "regular" dividend,
although for some years a "special" dividend had been declared and
paid simultaneously with each "regular" dividend and the amount
tendered did not include anything for the twelve days at the rate of
the "special" dividend.

In a suit by a corporation against the executor of a deceased stockholder
to enforce a requirement that the defendant transfer the decedent's

stock to the plaintiff at an appraised price, there was no error in a finding that there was no laches in commencing the suit about eighteen months after the earliest time when the plaintiff was entitled to demand the stock.

BILL IN EQUITY, filed in the Superior Court on July 27, 1939.

The case was heard by *Baker,* J.

The by-law of the plaintiff in question was as follows: "Any member of this corporation who shall be desirous of selling any of his shares; the executor or administrator of any member deceased; and the grantee or assignee of any shares sold on execution, shall cause such, their shares respectively, to be appraised by the directors, which it shall be their duty to do on request, and shall thereupon offer the same to them for the use of the corporation, at such appraised value; and if said directors shall choose to take such shares for the use of the corporation, such member, executor, administrator, or assignee shall, upon the payment or tender to him of such appraised value thereof, and the dividends due thereon, transfer and assign such share or shares to said corporation: *provided,* however, the said directors shall not be obliged to take such shares at the appraised value aforesaid, unless they shall think it for the interest of the company; and if they shall not, within ten days after such shares are offered to them in writing, take the same, and pay such member, executor, administrator or assignee therefor the price at which the same shall have been appraised, such member, executor, administrator, or assignee shall be at liberty to sell and dispose of the same shares to any person whatever. It shall be the duty of such executor, administrator, grantee or assignee to offer said shares for appraisal and to be taken by the corporation, if it shall so elect, whenever requested by the Actuary or Secretary, and no dividends or interest shall be paid or allowed after a failure to comply with such request: *provided,* that such request shall not be made until after the payment of one dividend and the expiration of six months from the death of the owner, or sale as aforesaid; but the offer may be made at any earlier period if the party shall prefer."

Pursuant to an order by *Baker*, J., a final decree was entered by order of *Greenhalge*, J., in substance directing the defendant executors to surrender to the plaintiff the certificates of stock in question and to execute and deliver transfers to the plaintiff thereof "upon payment or tender of payment by the plaintiff" to the executors "of the amount due in accordance with the by-laws of the plaintiff namely" the amount of the appraisal by the plaintiff's directors; directing the defendant trustees to make such delivery and assignments to the executors as would enable them "to comply with the foregoing" order; and adjudging that all dividends declared on the "stock subsequent to January 12, 1939, the date of the appraisal . . . by the directors" belonged to the plaintiff "in its own right."

*P. B. Buzzell*, for the defendants.

*B. E. Eames*, for the plaintiff.

RONAN, J. This is a bill for specific performance against the executors and trustees under the will of William S. Spaulding, who at the time of his death was a stockholder of the plaintiff, to enforce certain restrictions, relative to the transfer of its stock, providing for the purchase by the plaintiff of the stock of a deceased stockholder. The defendants appealed from a final decree ordering the transfer of the stock to the plaintiff upon the payment of a designated amount.

The case is here with a report of the evidence and a report of the material facts. Many of these facts do not seem to be in dispute. The plaintiff is a banking corporation created by St. 1869, c. 182. The testator purchased the stock in different lots from 1891 to 1896, and he or his agents, upon delivery of the certificates, signed receipts agreeing to conform to the conditions and restrictions "therein referred to and to the By-Laws of the Company." The certificates stated that the shares were transferable "upon the conditions expressed in the By-Laws of the Company printed upon the back of this Certificate." These by-laws, which appeared upon the reverse side of these certificates, in so far as now material provide that the

executor of a deceased stockholder shall cause the shares to be appraised by the directors and shall offer said shares for such appraisal upon the request of the actuary or secretary of the plaintiff, and for the use of the corporation at the appraised value if the directors choose to purchase them, but that the executor may sell the shares to anyone if the directors do not purchase them for the corporation within ten days after they are offered by the executor. The request upon the executor shall not be made until after the payment of one dividend and the expiration of six months from the death of the owner, but the offer may be made at any earlier period "if the party shall prefer." By a vote of the majority of stockholders, the plaintiff, on February 5, 1902, adopted the provisions of R. L. c. 116, § 10, which, among other matters, provided that a banking corporation "may establish regulations controlling the assignment and transfer of its shares."

The testator died August 15, 1937, and the defendant executors were appointed September 21, 1937. The defendant trustees were duly appointed on October 18, 1938. They received from the executors on December 7, 1938, the shares of the plaintiff as a part of the trust estate and now have possession of these shares. The accounts of the executors, including the final account, have been filed in the Probate Court.

The secretary of the plaintiff on December 29, 1938, made a written request of the executors to offer the stock for appraisal in accordance with the terms of the by-law. The directors on January 12, 1939, appraised the value of the stock and voted to purchase the shares for the purpose of reallotting them to persons whom the officers believed would be desirable stockholders. The executors refused on April 26, 1939, to accept the appraised amount with interest from January 12, 1939, and refused to transfer the stock. The present bill was filed on July 27, 1939.

The defendants contend that this is a suit by a creditor of the testator which was not commenced within a year of the time the executors qualified, by the acceptance by the Probate Court of their bonds, for the performance of

their trust and that, consequently, the suit is barred by G. L. (Ter. Ed.) c. 197, § 9, as amended by St. 1933, c. 221, § 4. On the other hand, the plaintiff contends that the basis of its bill is the refusal of the executors to transfer the stock in accordance with its request of December 29, 1938, that the suit was seasonably brought within one year thereafter in accordance with G. L. (Ter. Ed.) c. 260, § 11, and that neither of these two last statutes applies as the bill seeks to enforce an equitable interest that the plaintiff has in the shares of stock. The determination of the issues thus presented depends entirely upon the nature of the obligations assumed by the testator as a part of the transaction by which he acquired the stock.

We need not consider the authority of the plaintiff, hereinafter referred to as the bank, to promulgate by-laws purporting to govern the transfer of its shares, for the reasons mentioned in *New England Trust Co.* v. *Abbott,* 162 Mass. 148, although since that decision the power of business corporations and banking corporations to establish restrictions upon transfer of their shares has been greatly broadened. G. L. (Ter. Ed.) c. 172, § 15, as amended by St. 1934, c. 349, § 10. *Barrett* v. *King,* 181 Mass. 476. *Silversmiths Co.* v. *Reed & Barton Corp.* 199 Mass. 371. *Adams* v. *Protective Union Co.* 210 Mass. 172. *Longyear* v. *Hardman,* 219 Mass. 405. *Fopiano* v. *Italian Catholic Cemetery Association,* 260 Mass. 99. *Albert E. Touchet, Inc.* v. *Touchet,* 264 Mass. 499. *Anderson* v. *Bean,* 272 Mass. 432. We do not, however, laying that issue to one side, intimate that these by-laws are invalid.

The testator at the time he purchased the shares entered into a contract with the bank that he would not transfer the shares without first offering them for appraisal and sale to the bank, and that his executors would, at the request of the bank, offer any of said stock that he owned at his death for appraisal and sale. The certificates were issued to him not only in consideration of the price paid, but also in consideration of his undertaking that these restrictions concerning the transfer of the shares would be complied with during his lifetime and after his death. *New England*

*Trust Co.* v. *Abbott,* 162 Mass. 148.   *Brown* v. *Little, Brown &
Co. (Inc.)* 269 Mass. 102.   *Krauss* v. *Kuechler,* 300 Mass. 346.
*Searles* v. *Bar Harbor Banking & Trust Co.* 128 Maine, 34.

One may make a contract that can be performed only
after his death by his executors or administrators and will
be binding upon his estate. *Harlow* v. *Dehon,* 111 Mass.
195. *Phillips* v. *Blatchford,* 137 Mass. 510. *Krell* v. *Cod-
man,* 154 Mass. 454. *Earle* v. *Angell,* 157 Mass. 294. *Early*
v. *Moor,* 249 Mass. 223. *Hale* v. *Wilmarth,* 274 Mass. 186.
*United States* v. *Stevens,* 302 U. S. 623. The executors held
the shares subject to the right of the bank to purchase them
in accordance with its contract with the testator, and, upon
the failure of the executors to comply with the terms of
the contract, the bank could bring an action at law for
damages, *Wonson* v. *Fenno,* 129 Mass. 405; *Fitzgibbons* v.
*White,* 296 Mass. 468, or a bill in equity for specific per-
formance where, as here, the stock was not readily pro-
curable in the open market. *Adams* v. *Messinger,* 147 Mass.
185. *Krauss* v. *Kuechler,* 300 Mass. 346. Whichever pro-
cedure the bank adopted, its rights depended upon the con-
tract, and its cause of action accrued only after a demand
by the bank and a refusal by the executors to transfer the
stock in compliance with the restrictions. The executors
had no greater rights in the shares of stock than did the
testator, and they held them subject to the right of the bank
to purchase them. The question is whether the bank, as
the holder of what was substantially an option, stood in
any better position than a creditor of the estate.

The short statute of limitations, G. L. (Ter. Ed.) c. 197,
§ 9, as amended, provides that an executor or administrator
shall not be held to answer any action of a creditor of the
deceased unless the action is commenced within a year of
his giving bond for the performance of his trust. The pur-
pose of the statute is to expedite the settlement of estates.
*Stebbins* v. *Scott,* 172 Mass. 356. *Parker* v. *Rich,* 297 Mass.
111. *Spaulding* v. *McConnell,* 307 Mass. 144. And, in
view of its aim, the term "creditor" as used therein has
been given a broad and comprehensive meaning and in-
cludes one having a claim not only in contract but also in

tort against the estate, and the word "action" as appearing in the statute has been held to apply to proceedings both at law and in equity. *Ginzberg* v. *Wyman*, 272 Mass. 499. *Lynch* v. *Springfield Safe Deposit & Trust Co.* 300 Mass. 14. *Dietrick* v. *Haywood*, 304 Mass. 623. *Mulligan* v. *Hilton*, 305 Mass. 5. The statute does not apply to suits to enforce equitable interests in property of a decedent in the possession of an executor, as such a suit is not one by a creditor to collect a debt but one by the holder of an equity to enforce his title. *Johnson* v. *Ames*, 11 Pick. 173. *Nashua Savings Bank* v. *Abbott*, 181 Mass. 531. *Stoneham Five Cents Savings Bank* v. *Johnson*, 295 Mass. 390.

Although the testator could not during his lifetime transfer his stock without first offering it for sale to the bank, he did not thereby continue to be a debtor of the bank so long as he continued to own the stock. Neither did his estate at the time of his death become the debtor of the bank. The bank, by virtue of the restrictions, had an option to purchase the stock which it could not exercise until six months after the death of the testator and after one dividend had been paid, but it did not as the holder of an option acquire any interest in the stock until it elected to purchase and notified the executors of its election. *Sirk* v. *Ela*, 163 Mass. 394. *Thacher* v. *Weston*, 197 Mass. 143. *Loring* v. *Lamson & Hubbard Corp.* 249 Mass. 272. The executors held the shares subject to the right of the bank to purchase them, and upon their refusal to sell them to the bank the latter acquired the right to have this specific property transferred to it upon the payment of the purchase price and thus to secure what the testator agreed it should have when he purchased the stock. *New England Trust Co.* v. *Abbott*, 162 Mass. 148. *Nashua Savings Bank* v. *Abbott*, 181 Mass. 531. *Witherington* v. *Eldredge*, 264 Mass. 166. *Goodhue* v. *State Street Trust Co.* 267 Mass. 28. *Stoneham Five Cents Savings Bank* v. *Johnson*, 295 Mass. 390. At no time in the proceedings to compel the executors to observe the restrictions did they become the debtors of the bank. There was no necessity for the bank to file a petition under G. L. (Ter. Ed.) c. 197, § 13, to require the

executors to retain assets, because the bank was not a
creditor holding a claim which would become payable out
of the assets, and, in the next place, the executors could
not deprive the bank of its right to enforce the restrictions
by transferring the stock to the trustees or to anyone else.
In any event, it is not necessary further to review the
relationship between the parties arising out of the restric-
tions on the transfer of the stock, for it is plain that the
bank was not a creditor of the estate and consequently was
not barred by G. L. (Ter. Ed.) c. 197, § 9, as amended, the
short statute of limitations, from enforcing its right to
acquire the stock. *Johnson* v. *Ames,* 11 Pick. 173. *Harlow*
v. *Dehon,* 111 Mass. 195. *Commissioner of Banks* v. *Hanover
Trust Co.* 247 Mass. 347. *Commissioner of Banks* v. *Tremont
Trust Co.* 259 Mass. 162. *Goodhue* v. *State Street Trust Co.*
267 Mass. 28, 43.

The rights of the parties were fixed by the contract which
was evidenced by the restrictions that appeared upon the
certificates, and there is nothing contained in the uniform
stock transfer act, G. L. (Ter. Ed.) c. 155, § 40, that pre-
vents the bank from enforcing the restrictions. The statute
applies to the shares of stock of a trust company. *Commis-
sioner of Banks* v. *Waltham Trust Co.* 293 Mass. 62. *Lane*
v. *Volunteer Co-operative Bank of Boston,* 307 Mass. 508.
If we assume in favor of the executors that this point is
open to them even if they were not innocent purchasers for
value, yet the bank is seeking to enforce a right arising only
out of a contract, the terms of which were set forth upon
the certificates of stock. There is nothing in the statute
that prevents the bank from maintaining the present suit.

The amount tendered the executors by the bank as the
purchase price of the stock consisted of the appraised value
of the stock, which was, per share, "$400 . . . with interest
on par of the stock from January 1, 1939, to January 12,
1939, at the rate of twenty per cent per annum" with inter-
est on this amount from the last mentioned date to the date
of the tender. The executors contend that the amount ten-
dered was insufficient in that it should also have included
a proportionate part of a special dividend at the rate of

ten per cent per year, which the bank had paid each year commencing with 1929. Notwithstanding the testimony tending to show that the real objection urged by the executors was that the request of the bank was too late, we assume, in favor of the defendants, that the bank was required to show a proper tender and that the point now urged is open to the defendants. *Tobin* v. *Larkin*, 183 Mass. 389. *Strumskis* v. *Tilenas*, 268 Mass. 550. *Hazen* v. *Warwick*, 256 Mass. 302. There was evidence that these special dividends had been paid each year for the last ten years prior to the date of the appraisal whenever a regular dividend was payable, and that it was the practice of the bank, in determining the price at which it would buy shares, to fix the appraised value of the shares at a certain sum plus a sum equivalent to a proportionate part of the regular dividend. The judge found that a proper amount was tendered. The executors were entitled in accordance with the contract made between the testator and the bank to receive the appraised value of the shares "and the dividends due thereon." The dividend payable February 1, 1939, to stockholders of record as of January 1, 1939, which included the regular and special dividends, was paid to the executors. The next regular dividend became payable on August 1, 1939, to stockholders of record on July 1, 1939, and a special dividend also was declared payable on August 1, 1939, to such stockholders. There was no dividend due and payable at the date of the appraisal other than the dividends payable on February 1, 1939. The bank did not agree to pay a certain value for stock that carried a prescribed rate of dividends "plus accrued dividends," as did the defendants in *Kennedy Bros. Inc.* v. *Bird*, 287 Mass. 477. The executors were not entitled to a proportionate part of a special dividend from January 1, 1939, to January 12, 1939, as no such dividend had been declared and, consequently, was not due or payable. At the time of the appraisal it could not be definitely known whether another special dividend would be declared in the following summer. There was no error in finding that a tender in the proper amount had been made by the bank. *Boston Safe Deposit*

*& Trust Co.* v. *Adams,* 219 Mass. 175, 177. *Lee* v. *Fisk,* 222 Mass. 418. *Thomas* v. *Laconia Car Co.* 251 Mass. 529. *Adams* v. *Eastern Massachusetts Street Railway,* 257 Mass. 115. *Anderson* v. *Bean,* 272 Mass. 432, 444. *Willson* v. *Laconia Car Co.* 275 Mass. 435. *In re Roberts & Cooper, Ltd.* [1929] 2 Ch. 383.

Relief is not barred by laches. The bank might have acted more expeditiously, but its delay in requesting the executors to transfer the stock did not injuriously affect the estate. The judge found that the bank was not guilty of laches. In so far as this is a pure finding of fact, we cannot say that, upon the reported evidence, it is plainly wrong; and in so far as the finding is one of fact and law, it does not appear to be vitiated by any error of law. *Safford* v. *Lowell,* 255 Mass. 220. *Stuck* v. *Schumm,* 290 Mass. 159, 166.

*Decree affirmed with costs.*