**In re WEBBER LUMBER & SUPPLY CO., INC., Debtor.**

**WEBBER LUMBER & SUPPLY CO., INC., Plaintiff,**

**v.**

**TRUCKLEASE CORPORATION, Defendant.**

**Bankruptcy No. 90–40918JFQ. Adv. No. 91–4089.**

United States Bankruptcy Court, D. Massachusetts.

Nov. 19, 1991.

John J. Monaghan, Boston, Mass., for debtor/plaintiff.

John F. Murphy, Worcester, Mass., for Trucklease Corp/defendant.

### OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

This is a suit between a bankruptcy estate and a lessee in possession of estate real estate. The debtor, as estate representative, seeks through its "strong-arm" powers to avoid the lease, and the option to purchase granted thereunder, for lack of recording. Webber Lumber & Supply Co., Inc. (the "Debtor"), moves for summary

judgment against the lessee, Trucklease Corporation (the "Lessee"). Presented are questions of whether (i) an option contained in a lease is subject to the same avoidance rights which apply to the lease, and (ii) the lessee is protected by the restrictions contained in 11 U.S.C. § 365 (1988 Supp.1990) concerning rejection of a lease or contract to sell where the lessee or buyer is in possession.

## I. FACTS

The Debtor filed its chapter 11 petition on June 12, 1990. Prior to then, on January 9, 1986, the Debtor and the Lessee entered into a lease under which the Lessee leased a 1.35 acre portion of the ten acre parcel owned by the Debtor located at 130 Gold Star Boulevard, Worcester, Massachusetts. The lease was for a nineteen year period, commencing on January 9, 1986 and expiring on December 4, 2004. It gives the Lessee the option to purchase the leased premises at a price of $30,000 per acre "[p]rovided that there is [then] no material breach of this lease by the Lessee." The option is exercisable by a written notice of intention to exercise which can fix a transfer date no earlier than sixty days and no later than ninety days after December 4, 2004. It is exercisable earlier if the Debtor intends to sell the property. The option terminates on December 4, 2004.

The lease contains the following provision, which has produced the present litigation:

> No notice of this Lease, or of the option to purchase set out in this lease, shall be recorded in any Registry of Deeds.

As a result, neither the lease nor any notice of it has been recorded.

In February of 1990, the Debtor was involved in negotiations for the sale of the entire ten acre parcel to Costco Wholesale Corporation ("Costco"). On February 28, 1990, when the Debtor and Costco had arrived at an agreement in principle for a sale at $5,750,000, the Debtor and the Lessee entered into a letter agreement under which the Lessee agreed to termination of the lease and option in consideration of $600,000. Under the terms of the letter agreement, the transaction was to take place "provided that the sale to Costco is completed," and the $600,000 was to be paid to the Lessee "simultaneously with the Costco closing."

The Debtor thereafter signed a purchase and sale agreement with Costco at a $5,750,000 price, and Costco paid a $500,-000 deposit. But Costco later sought to rescind the agreement and obtain a refund of its deposit on the ground that a condition pertaining to the property's subsurface had not been satisfied. This resulted in litigation here. While that litigation was pending, the property was put up for sale again and Costco was determined to be the high bidder at a sealed bid auction with a winning bid of $4,900,000 conditioned upon the Debtor's release of its right to the deposit.

## II. THE "STRONG–ARM" CLAUSE— § 544(a)

The Debtor seeks to avoid the lease and the option contained therein pursuant to § 544(a) of the Bankruptcy Code.[1] Under that section, the Debtor has the "rights and

---

1. 11 U.S.C. § 544 (1988) states in relevant part:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

powers of, or may avoid any transfer of property of the debtor ... that is voidable by" a judicial lien creditor, or judgment creditor. The Debtor also has the avoidance rights of a "bona fide purchaser of real property ... from the debtor." Its bona fide purchaser rights are limited to avoidance of transfers of property made by the debtor. *In re Mill Concepts Corp.,* 123 B.R. 938 (Bankr.D.Mass.1991). Reference to "transfer" in the statute includes outright transfers as well as security transfers. 11 U.S.C. § 101(54) (1988 & Supp. 1991).

■ The execution of this lease transferred to the Lessee an interest in the property consisting of the leasehold thereby created, so that with respect to the lease the Debtor is clothed with bona fide purchaser rights as well as judicial lien and judgment creditor rights. Beyond that, even if the lease execution is not treated as a transfer, the Debtor has the rights against the Lessee held by a hypothetical judicial lien or judgment creditor. As we shall see, any one of these rights is sufficient to avoid the lease under Massachusetts law.

Under Mass.Ann.Laws ch. 183, § 4 (Law. Co-op.1987),[2] a conveyance of specified interests in real property or the granting of a lease of real property for more than seven years "shall not be valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it, unless it, or ... a notice of lease ... is recorded in the Registry of Deeds in the county or district in which the land to which it relates lies." The Massachusetts courts have been quite strict in construing the requirement of "actual notice." They distinguish between actual notice and so-called inquiry notice, holding that it is not sufficient that there be notice of facts which would be sufficient to induce a reasonable person to inquire further and thereby determine the existence of the conveyance or lease in question. *E.g., Mister Donut of America, Inc. v. Kemp,* 368 Mass. 220, 330 N.E.2d 810 (1975); *Tramontozzi v. D'Amicis,* 344 Mass. 514, 183 N.E.2d 295 (1962); *McCarthy v. Lane,* 301 Mass. 125, 16 N.E.2d 683 (1938). Actual notice is equated in these decisions to actual knowledge. *See In re Daylight Dairy Products, Inc.,* 125 B.R. 1 (Bankr.D.Mass. 1991).

■ If the option involved here is considered apart from the lease, it would not be avoidable by the Debtor because the grant of an option is not the conveyance of a property interest, much less one of the types of interest described in the statute. It is of course true that an option to purchase real estate may be enforced through the equitable remedy of specific performance, and consequently one holding such a contractual right is often described as having an equitable interest in the real estate. But this is merely reflective of the equitable remedy available rather than descriptive of the true property interest. *In re A.J. Lane & Co., Inc.,* 107 B.R. 435, 437

**2.** § 4. Effect of Unrecorded Deed, Lease for More than Seven Years, or Assignment of Rents or Profits.

A conveyance of an estate in fee simple, fee tail or for life, or a lease for more than seven years from the making thereof, or an assignment of rents or profits from an estate or lease, shall not be valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it, unless it, or an office copy as provided in section thirteen of chapter thirty-six, or, with respect to such a lease or an assignment of rents or profits, a notice of lease or a notice of assignment of rents and profits, as hereinafter defined, is recorded in the registry of deeds for the county or district in which the land to which it relates lies. A "notice of lease", as used in this section, shall mean an instrument in writing executed by all persons who are parties to the lease of which notice is given and shall contain the following information with reference to such lease:—the date of execution thereof and a description, in the form contained in such lease, of the premises demised, and the term of such lease, with the date of commencement of such term and all rights of extension or renewal. A "notice of assignment of rents or profits", as used in this section, shall mean an instrument in writing executed by the assignor and containing the following information:—a description of the premises, the rent or profits of which have been assigned, [sic] adequate to identify the premises, the name of assignee, and the rents and profits which have been assigned. A provision in a recorded mortgage assigning or conditionally assigning rents or profits or obligating the mortgagor to assign or conditionally assign existing or future rents or profits shall constitute a "notice of assignment of rents or profits".

(Bankr.D.Mass.1989). The Debtor would therefore not be able to treat the option as a defeasible transfer if the option is considered apart from the transfer of the leasehold interest under the lease.

In *Mister Donut of America,* a lease for more than seven years contained an option to purchase at a fixed price. A notice of the lease was recorded, but the notice made no mention of the option. A subsequent purchaser of the property, who had no actual knowledge of the option, sought judgment declaring that he was not subject to the option. The court held against him, ruling that the recorded notice of lease gave constructive notice of the entire lease, including the option, and that the option was not encompassed by the statute's requirement that the notice include "all rights of extension or renewal." The court drew a distinction between options which are dependent upon a lease and those which are independent of the lease and therefore not governed by the statute's requirements concerning recording of a lease or notice of lease. The court concluded that the option was dependent upon the lease because it was limited to purchase of the leased premises and could be exercised only during the existence of the lease. 330 N.E.2d at 813.

The same is true of the option in the present case. It is contained in the lease and is intimately related to it. It grants the right to purchase only the leased premises. It must be exercised during the term of the lease, and then only if the Lessee is not in material breach. A judicial lien creditor or bona fide purchaser would therefore take free of the option, just as he would take free of all other terms of the lease as the result of the absence of any recording. In *Mister Donut of America,* the purchaser took subject to the lease and option because of compliance with the recording requirements concerning the lease. Here, the Debtor may avoid the lease and option because of the absence of recording. There is no question concerning the Debtor's actual knowledge. Under § 544, the Debtor exercises the rights of a trustee "without regard to any knowledge of the trustee or of any creditor."

The Lessee is provided no support by *McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982). That decision relied upon Pennsylvania law under which possession of property gives constructive notice of the rights of the party in possession. This is to be contrasted with the Massachusetts requirement of "actual notice" in the absence of recording.

### III. SECTION 365(h) AND (i) OF THE BANKRUPTCY CODE

■ The Lessee relies upon the provisions of § 365(h) and (i) which give protection to lessees and purchasers in possession against the bankruptcy estate's rejection of the lease or contract of sale. I agree that these subsections demonstrate a concern by Congress for the protection of such property interests. That concern, however, is no greater than the concern for property interests expressed throughout the Bankruptcy Code. Section 544(a) is nevertheless expressly directed at the avoidance of property interests which are subordinate to the rights of a judicial lien creditor, judgment creditor or bona fide purchaser of real property.

In *In re Mill Concepts Corp.,* 123 B.R. 938 (Bankr.D.Mass.1991), I relied in part upon a concern expressed in § 541(d) for protection of constructive trust beneficiaries in holding that such trusts are outside the scope of the trustee's avoidance powers. But I did so in the process of construing the somewhat confusing language of § 544(a)(3) to apply only to property transferred by a debtor and not to property retained by the debtor subject to a constructive trust. Here, there is no ambiguity in the statute. Section 544(a) applies to "any transfer of property of the debtor." This certainly includes the transfer of a leasehold interest. The Debtor, moreover, has the additional "rights and powers" of a judicial lien creditor or judgment creditor which are exercisable without regard to any transfer. The Lessee would have us "reconcile" § 544(a) with § 365(h) and (i) by excluding from the sweep of § 544(a) all lessees and purchasers in possession. But there is no conflict among the statutes.

Section 365(h) and (i) prohibit the *rejection* of the property interest of a lessee or purchaser in possession. These subsections are based upon the proposition that rejection, which merely involves a debtor declining to assume a contractual obligation, should not be used to terminate property interests. Section 544(a), on the other hand, has as its express purpose the *avoidance* of property interests. The statutes supplement each other rather than conflict. All that was necessary to escape § 544(a) was a recording of the lease or a notice of the lease. The Debtor's agreement not to do so was fatal.

## IV. THE LEASE CONSIDERED AS AN AGREEMENT FOR SALE OR AN ACTUAL SALE

■ The Lessee argues that this is not a lease at all but rather an agreement for sale or an actual sale. It alleges that the price of $30,000 per acre was substantially below market value in 1986. The Lessee points to its actual possession and its responsibility under the lease for maintenance, repairs and insurance. It also relies upon its substantial expenditures for a crossing between these leased premises and its other leased premises on the opposite side of the railroad tracks. The Lessee argues that these facts, in their totality, are indicia of a sale rather than a lease, relying upon the multitude of cases on the subject which deal with items of personal property. I am unpersuaded that there are present here the factors required in those decisions for transformation of a transaction called a lease into a sale or an agreement to sell. Nor do I believe that decisions concerning personal property should govern transactions in real estate. Moreover, even if this lease were construed to be a sale, a recording would still be necessary under the statute.

## V. LETTER AGREEMENT OF FEBRUARY 28, 1990

The Debtor relies upon the letter agreement of February 28, 1990 under which, in anticipation of a $5,750,000 sale by the Debtor to Costco, the Lessee agreed to terminate its lease and release its option in consideration of $600,000. The Debtor contends that the Lessee thereby "lost" the right to exercise its option. In view of my holding in favor of the Debtor under § 544(a), it is not necessary to decide this issue. But the letter agreement raises another issue which should be addressed.

The question arises whether the letter agreement created rights in the Lessee which are not governed by § 4 of chapter 183 dealing with a "lease." I conclude that the letter agreement is no longer in effect. At the time of the agreement, the Debtor was negotiating with Costco for a sale of all its property, including the leased premises, for $5,750,000. The obligations of the parties under the letter agreement were contingent upon a sale at that price actually taking place, which never transpired. Although I have recently authorized a sale of the entire ten acres to Costco; that was for another price after a new round of bidding prompted by a proposed new sale to an entirely different party.

## VI. CONCLUSION

As a hypothetical judicial lien creditor, judgment creditor or bona fide purchaser of real property, the Debtor may avoid the lease due to the absence of recording under the Massachusetts statute governing leases for more than seven years. Because the option is contained in the lease and is intimately associated with it, avoidance of the lease operates as avoidance of the option as well.

A separate judgment has entered to this effect.