COMPETROL ACQUISITION PARTNER-SHIP, L.P., Charlestown Holdings, Inc., Immobiliare New England, L.P., Navy Yard Realty Trust and Shipyard Marina Trust, Debtor.

LDA ACQUISITION, LLC, and Martin Oliner, as Plan Administrator Under the Second Amended Joint Plan of Liquidation of Competrol Acquisition Partnership, L.P., Charlestown Holdings, Inc. and Immobiliare New England, L.P., Plaintiffs,

v.

FLAG WHARF, INC., Defendant.

Bankruptcy Nos. 94–622 (PJW)
to 94–626 (PJW).
Adversary No. 96–85.

United States Bankruptcy Court,
D. Delaware.

Nov. 18, 1996.

Bayard J. Snyder, Snyder & Associates, Wilmington, DE, and Anthony M. Moccia, Eckert Seamans Cherin &.Mellott, Boston, MA, for Flag Wharf, Inc.

James L. Patton, Jr., S. David Peress, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for LDA Acquisition, LLC and Martin Oliner, as Plan Administrator.

### MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This is the Court's ruling on Flag Wharf Inc.'s ("Defendant") motion to dismiss Count IV of LDA Acquisition, LLC ("LDA") and Martin Oliner's ("Oliner" and together with LDA, "Plaintiffs") Complaint for failure to state a claim upon which relief can be granted, and to dismiss the remaining three Counts of the Complaint for lack of subject matter jurisdiction. For the reasons set forth below, Defendant's motion will be granted.

### FACTS

In 1991, Charleston Holdings, Inc. ("CHI") and Building 197 Loan Acquisition Corporation ("197 Acquisition"), predecessor in interest to Defendant, were, along with others, parties to a Forbearance and Estoppel Agreement which intended to address CHI's (and other parties not relevant to the present case) defaults in certain construction financing (the "Forbearance Agreement"). The notes which evidenced the construction financing (the "Notes") had been acquired from their holders by 197 Acquisition. The Notes were secured by a lien on certain real property, including a building known as Building 197 located in Charlestown, Boston, Massachusetts. Subsequent to their entry into the Forbearance Agreement, CHI's interests in Building 197 were sold to 197 Acquisition in a foreclosure sale. (Answering Brief p. 2).

Under the Forbearance Agreement, 197 Acquisition agreed to forbear from the pursuit of its remedies under the Notes pending the passage of time or certain events. Additionally, 197 Acquisition agreed to .limit its

recourse in respect of the Notes to the property securing such Notes and not the obligors, including CHI. (Complaint ¶ 12). CHI was granted an option to purchase 110 "perpetual parking space licenses" at Building 197 (the "Option"). (Answering Brief p. 2–3).

On June 24, 1994, CHI and its affiliates commenced their voluntary chapter 11 bankruptcy case in this Court. On January 4, 1996, pursuant to 11 U.S.C. § 365, this Court entered an order approving CHI's assumption of the Forbearance Agreement.[1] Thereafter, CHI assigned its interest in the Option to LDA in accordance with the terms of CHI's Second Amended Joint Plan of Liquidation which was confirmed on January 26, 1996 (the "Plan").

By letter dated May 9, 1996, LDA advised Defendant of its exercise of the Option. Counsel for Defendant, by letter dated May 23, 1996, denied that LDA has the right to exercise the Option.

On May 31, 1996, Plaintiffs commenced this action against Defendant, seeking declaratory relief and damages related to Defendant's alleged failure to perform its obligations to sell 110 parking space licenses under the Forbearance Agreement. The first three Counts of the complaint, which are brought by LDA, assert state law causes of action not involving any debtor in the concluded chapter 11 case.

Count IV, which is brought by Oliner in his capacity as administrator under the Plan, alleges that Defendant willfully violated the automatic stay when Defendant, during the pendency of CHI's chapter 11 case, "conveyed interests in parking spaces [at Building 197] which were otherwise required to satisfy [Defendant's] obligations to CHI under the Option." Oliner seeks compensatory and consequential damages arising from Defendant's alleged violation of § 362(a).

Defendant, in its Memorandum in Support of its Motion to Dismiss Count IV, admits that it sold "certain parking space interests"

(the "licenses") during CHI's chapter 11 case. (Opening Brief p. 3). Defendant, however, contends that the automatic stay provisions of § 362(a) are not applicable to the sale of the licenses because the licenses did not constitute property of CHI's estate. Defendant argues that since CHI failed to exercise the Option during its chapter 11 case, CHI never had a property interest in any of the parking space licenses under applicable state law. Accordingly, Defendant argues that since CHI merely had an option to purchase certain licenses, the sale of the licenses did not constitute a sale of CHI's estate property and did not violate the automatic stay.[2]

Plaintiffs do not disagree that if the licenses sold by Defendant to third parties during the pendency of CHI's chapter 11 case did not constitute property of CHI's estate, the sale did not constitute a violation of the automatic stay. Plaintiffs, however, contend that the licenses did constitute property of estate and thus, Defendant violated the automatic stay provisions of § 362(a).

## LEGAL STANDARD

In its review of a motion to dismiss for failure to state a claim, this Court is required to accept as true the facts alleged in the complaint and all reasonable inference that can be drawn therefrom. *See D.R. by L.R. v. Middle Bucks Area Vocational Tech. School,* 972 F.2d 1364, 1367 (3d Cir.1992). The Court may also consider any documents attached as exhibits to the complaint. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir.1990). Construing the complaint and exhibits in favor of Plaintiffs, the Court must determine "whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665–66 (3d Cir. 1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989).

---

1. Reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* are hereinafter cited as "§ _____."

2. Alternatively, Defendant argues that even if CHI did have a property interest in certain parking space licenses, the sale of the licenses did not constitute a sale of the property of estate since it

still has "110 unreserved parking space licenses sufficient to comply with the terms of the option." (Reply Brief p. 2). Because I agree with the Defendant's first contention, I need not address this alternative argument.

## DISCUSSION

■ Pursuant to § 362(a)(3), a filing of a bankruptcy petition triggers a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 541 describes the "property of the estate" to which the automatic stay provisions of § 362(a) apply as "all legal and equitable interests of the debtor in property as of the commencement of the case." The determination of what constitutes § 541 property is a federal question, but the debtor's interest in property is determined by nonbankruptcy law. *Koch Refining v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1343 (7th Cir.1987) (citations omitted).

■ "In determining whether a debtor has a 'legal' or 'equitable' interest in property, the court must turn to state law as the determination of property rights in the assets of a bankruptcy estate is governed by state law." *Soliman v. Spencer (In re Spencer,)* 115 B.R. 471, 476 (D.Del.1990) (citing *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979)). In the instant case, therefore, the protection of the automatic stay is limited to those legal and equitable interests which applicable Massachusetts law grants CHI.[3] *See id.*

There are two different types of property interest involved with respect to the Option. One is CHI's interest as the owner of the "Option" itself. The other is CHI's "attainable interest" in the subject of the Option. As to the former, Defendant correctly acknowledges that "the option right conferred upon CHI became property CHI's bankruptcy estate when CHI filed for Chapter 11." (Opening Brief p. 3). As to the latter, however, the parties are in dispute: whether, under Massachusetts law, a holder of an unexercised purchase option enjoys a property interest in the subject of the option, which may or may not become the property of the option holder depending on whether the holder timely exercises the option and the purchase is consummated.

■ As a general rule of Massachusetts law, the granting of an option to purchase property does not convey a property interest in the subject of the option. *See New England Trust Co. v. Spaulding,* 310 Mass. 424, 38 N.E.2d 672, 676 (1941) (holding that holder of option to purchase stock does not acquire any interest in the stock until it elects to purchase); *Loring v. Lamson & Hubbard Corp.,* 249 Mass. 272, 143 N.E. 916, 918 (1924) (holding that until option holder exercises its option, it has no right in the property subject to the option); *Thacher v. Weston,* 197 Mass. 143, 83 N.E. 360, 361 (1908) (holding that holder of option to purchase real estate has no interest in the real estate since the party agreed to sell the real estate remains as the owner of the real estate pending the option holder's election). *Cf. Webber Lumber & Supply Co. v. Trucklease Corp. (In re Webber Lumber & Supply Co.),* 134 B.R. 76, 78 (Bankr.D.Mass.1991) (noting that grant of option to purchase is not conveyance of property interest that would be subject to bankruptcy trustee's avoidance power under § 544(a)).[4]

■ Rather, the holder of an unexercised option possesses a contract right "by which the owner of the property agrees with the holder of the option that he has the right to buy the property according to the terms and conditions of the contract." *Lucey v. Hero Int'l Corp.,* 361 Mass. 569, 281 N.E.2d 266, 269 (1972) (citing *Morgan v. Forbes,* 236 Mass. 480, 128 N.E. 792, 793 (1920)) (discussing option to purchase real estate).

By such an agreement the owner does not sell the land, nor does he at the time contract to sell. He does, however, agree that the [holder of the option] shall have the right at his election or option, to demand the conveyance in the manner specified. It is merely *the right to an election*

---

3. The parties are in agreement that the extent of CHI's interest in the licenses sold by Defendant during the pendency of CHI's Chapter 11 case must be determined based on Massachusetts law. (Opening Brief p. 4; Answering Brief p. 3).

4. A similar holding is found in *In re Kofoed,* 46 F.Supp. 118, 120 (E.D.Wash.1942) (under Washington law, debtor who holds option to purchase real estate has no interest in the real estate so that bankruptcy court cannot exercise its jurisdiction over the real estate).

which has been sold and the owner of this right is not bound to complete the sale. *Morgan,* 128 N.E. at 793 (Emphasis added). Therefore, under Massachusetts law, once an option is granted, the option holder merely possesses a contract right to "an election." *See id.* If the option holder chooses not to exercise its option, no property interest in the subject is ever vested on the holder. Even if the holder does elect to exercise its option, the holder does not acquire the property subject to the option unless and until the grantor of the option and the option holder consummate the sale of the property. If the option holder is financially incapable of closing the sale, no property interest in the subject is ever vested in the holder.

■ On the other hand, if the grantor refuses to honor the election and breaches the option agreement, the holder does not automatically obtain a property interest in the subject of the option. In this situation, since what the option holder possesses under the option agreement is a contract right to sue to enforce the option, *see Webber Lumber & Supply,* 134 B.R. at 78 (noting that equitable remedy of specific performance may be available for the holder of option to purchase real estate); *In re A.J. Lane & Co.,* 107 B.R. 435, 438 (Bankr.Mass.1989) (same), unless and until a proper court grants the option holder a judgment enforcing the option agreement, the property subject to the option does not become property of the option holder.

■ As the discussions in the above cited cases illustrate, there are at least three scenarios under which the option holder never acquires a property interest in the subject of the option: namely, (1) the option holder elects not to purchase because it is not in its economic best interest to do so, i.e., the option has no value; (2) the option holder is financially incapable of paying the purchase price; and (3) the optionor, by reason of a prior transfer or otherwise, is incapable of conveying the subject following the exercise of the option.

■ Plaintiffs, although they agree with the general rule that the granting an option does not convey a property interest in the subject of the option, contend that courts in Massachusetts have recognized an exception to that general rule. Plaintiffs argue that the instant case falls under the exception purportedly created by *Eastman Marble Co. v. Vermont Marble Co.,* 236 Mass. 138, 128 N.E. 177 (1920). (Answering Brief p. 3–7). In *Eastman Marble,* the court held that where an option agreement to purchase real estate is more than "a simple personal agreement" and purports to convey more than "a mere option to purchase," the agreement may "create an equitable interest in land" so that such an option right can be voided under the rule against perpetuities. *See id.* at 182. The court in *Eastman Marble* found that the option clause of the contract before it violated the rule against perpetuities. Since *Eastman Marble,* whenever a contract concerns fee simple real estate and grants an option to purchase the real estate, the contract became a subject of judicial scrutiny because it may violate the rule against perpetuities. *See e.g., Certified Corp. v. GTE Prods. Corp.,* 392 Mass. 821, 467 N.E.2d 1336, 1338 (1984) (lease agreement with option to purchase); *Peterson v. Tremain,* 35 Mass.App.Ct. 422, 621 N.E.2d 385, 386 (1993) (option contract to purchase real estate).

I find *Eastman Marble* to be not controlling here for a number of reasons. First, the contract at issue here does not concern fee simple real estate. The contract here is a loan forbearance agreement among numerous parties, which granted CHI, *inter alia,* an option to purchase certain parking space licenses. Second, unlike the contract in *Eastman Marble,* the Forbearance Agreement does not address disputed fee simple interests in real estate which the interdependent covenants of that contract addressed. The Forbearance Agreement is simply an accommodation among creditors and debtors. Third, and more importantly, the critical language of *Eastman Marble* upon which Plaintiffs rely (namely, "[t]he agreement purports to create an equitable interest in land," *id.* at 182) is only dicta, according to a more recent Massachusetts Supreme Court decision. *See Certified Corp.,* 467 N.E.2d at 1339, n. 6.

■ I believe that the controlling view on the issue before me is that expressed by the

court in *In re Webber Lumber & Supply Co. Inc.,* 134 B.R. 76 (Bankr.Mass.1991):

> It is of course true that an option to purchase real estate may be enforced through the equitable remedy of specific performance, and consequently one holding such a contractual right is often described as having an equitable interest in the real estate. But *this is merely reflective of the equitable remedy available rather than descriptive of the true property interest.*

*Id.* at 78. [Emphasis added.] I therefore find that the existence of an equitable remedy does not mean that the option holder has a true property interest in the subject of the option.

Consequently, I find that during the pendency of its Chapter 11 case CHI, as a possessor of an unexercised option, did not have a "legal" or "equitable" interest in any parking spaces licenses owned by Defendant, including any licenses sold by Defendant, and that therefore the licenses did not constitute "property of estate" under § 541. Accordingly, Defendant's sale of the licenses did not constitute "any act to obtain possession" or "to exercise control over property" of CHI's estate in violation of the § 362(a) automatic stay.

### CONCLUSION

For all of the foregoing reasons, I find that the facts alleged by Plaintiffs, even if true, do not state a claim for relief under § 362 and therefore Count IV should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b)(6). Additionally, since Count IV is the only Count that provides subject matter jurisdiction for this Court, I find that the entire complaint should be dismissed for lack of subject matter jurisdiction.